[No. E029190. Fourth Dist., Div. Two. Oct. 8, 2002.]

JANE DOE 1 et al., Plaintiffs and Appellants, v.
CITY OF MURRIETA et al., Defendants and Respondents.

## Counsel

Stanton T. Mathews & Associates and Paul W. Ralph for Plaintiffs and Appellants.

Ferguson, Praet & Sherman, Peter J. Ferguson; Greines, Martin, Stein & Richland and Alison M. Turner for Defendants and Respondents.

## Opinion

**GAUT, J.**—This action arises from a Murrieta police officer's sexually abusing plaintiffs, Jane Doe 1 and Jane Doe 3 (plaintiffs), who at the time were 16 years old and were participants in the Murrieta Police Department's Explorer Program.

Plaintiffs appeal judgment entered after the trial court sustained, without leave to amend, the demurrers of defendants City of Murrieta and the Murrieta Police Department (collectively defendants) to plaintiffs' second, third, and fourth causes of action. Thereafter, the trial court granted defendants' summary judgment motion as to the remaining first and fifth causes of action.

Plaintiffs contend the trial court erred in ruling as to the second, third, and fourth causes of action that defendants were not vicariously liable for Officer

Derick Boyd's sexual misconduct. Plaintiffs further argue the trial court erred in granting summary judgment as to the first and fifth causes of action since triable issues existed as to whether defendants negligently hired, trained, and supervised Boyd, and as to whether defendants breached the Boy Scouts of America (BSA) charter agreement by failing to follow BSA rules and regulations.

We conclude the trial court properly sustained defendants' demurrers to the second, third, and fourth causes of action. The complaint's allegations establish, as a matter of law, that Boyd was not acting in the course and scope of his employment when he sexually abused plaintiffs and thus defendants cannot be found vicariously liable.

As to the first cause of action for negligent hiring, training, and supervision, the trial court erred in granting summary judgment since there were material triable issues of fact as to whether defendants knew or should have known that Boyd was sexually exploiting plaintiffs or posed a risk of doing so.

We further conclude summary judgment was proper as to plaintiffs' fifth cause of action for breach of contract since the claims are barred due to plaintiffs' failure to properly allege this theory and underlying facts in their government claims.

We reverse the judgment with directions that the trial court enter a ruling denying summary judgment, denying summary adjudication as to the first cause of action for negligence, and granting summary adjudication as to the fifth cause of action for breach of contract. We uphold the trial court's ruling sustaining without leave to amend defendants' demurrers to the second, third, and fourth causes of action.

## 1. *Facts and Procedural Background*

The following facts are undisputed. The Murrieta Police Department (MPD) obtained a charter from the BSA to operate a police "explorer" program. The program was designed to acquaint 14- to 18-year-old young women and men with law enforcement and encourage them to consider a law enforcement career. MPD officers trained and supervised the explorers, and the explorers provided the MPD with volunteer services and assistance.

In applying for the charter agreement with BSA, the MPD drafted and submitted an MPD policies and procedures manual for the proposed MPD explorer program. The BSA approved the manual and issued the MPD an explorer program charter.

As part of the program, MPD officers, who served as explorer advisers, took explorers on one-on-one ride-alongs in which an explorer was permitted to ride along on patrol with an on-duty officer. Generally an explorer was permitted one ride-along a month and could earn additional ride-alongs by spending extra time performing explorer duties. An explorer could request riding with a particular officer. Sergeant Attebery was the MPD explorer program head. Officer Boyd was an MPD explorer adviser and worked under the supervision of Attebery.

In late 1996, plaintiffs, who were MPD explorers, became infatuated with Boyd. Beginning around September 1997 through December 1997, they had consensual sexual encounters with him, including during frequent ride-alongs late at night. Jane Doe 1 went on 30 to 40 ride-alongs with Boyd and Jane Doe 3 went on 15 to 20 ride-alongs with Boyd.

On March 2, 1998, plaintiffs filed government claims against defendants and Boyd, asserting that from January 1997 through January 1998, Boyd had engaged in unlawful sexual acts with them while he was on duty.

Boyd also was criminally charged with committing multiple acts of unlawful sexual intercourse and other sexual conduct with a minor (plaintiffs) in violation of Penal Code sections 261.5, subdivision (c) and 288a, subdivision (b)(1), and pled guilty to these charges on March 10, 1998.

On September 11, 1998, plaintiffs each filed a civil action against defendants and Boyd, alleging negligence, battery, sexual battery, intentional infliction of emotional distress, and breach of contract. Defendants demurred to plaintiffs' complaint and first, second, and third amended complaints. The trial court ultimately sustained without leave to amend defendants' demurrers to the second, third, and fourth causes of action asserting vicarious liability.

The trial court consolidated plaintiffs' actions. Defendants then moved for summary judgment on the two remaining causes of action for negligence (first cause of action) and breach of contract (fifth cause of action). The trial court granted defendants' motion for summary judgment.

### 2. *Demurrers to Vicarious Liability Causes of Action*

Plaintiffs contend the trial court erred in sustaining without leave to amend defendants' demurrers to the second, third, and fourth causes of action.

### A. *Standard of Review*

■ "The scope of our review is limited to a determination of whether the . . . demurrer was erroneously sustained without leave to amend and

whether such a determination was an abuse of discretion. All material facts pleaded in the complaint and those which arise by reasonable implication are thus deemed true. We determine the legal sufficiency of the alleged facts to state a cause of action. [Citations.]"[1]

### B. *General Vicarious Liability Principles*

██ Plaintiffs argue that, in sustaining defendants' demurrers, the trial court erroneously concluded defendants could not be held vicariously liable for Boyd's sexual misconduct. ██ "Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment. [Citation.] . . . Respondeat superior is based on ' "a deeply rooted sentiment" ' that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities. [Citations.] [¶] . . . [¶] . . . 'A risk arises out of the employment when "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer. [Citations.]" ' "[2]

A public employer may be held vicariously liable under Government Code section 815.2, subdivision (a) "for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."[3]

### C. *Analysis*

██ The issue here is whether defendants can be held vicariously liable for a Murrieta police officer's sexually assaulting minors while participating in MPD's explorer program.

---

[1]*Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379, 1383 [49 Cal.Rptr.2d 166].

[2]*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208-209 [285 Cal.Rptr. 99, 814 P.2d 1341].

[3]Government Code section 815.2, subdivision (a).

Generally, the courts have not imposed vicarious liability for sexual assaults or misconduct of employees.[4] And in *Juarez v. Boy Scouts of America, Inc.*,[5] the court rejected the plaintiff Boy Scout's contention that BSA and the church, where the Boy Scout meetings were held, were vicariously liable for a troopmaster's sexually molesting the plaintiff. The *Juarez* court explained that "imposing such a sweeping doctrine as respondeat superior under the facts of this case would be contrary to the guidance provided by a number of cases that have consistently held that under the doctrine of respondeat superior, sexual misconduct falls outside the course and scope of employment and should not be imputed to the employer."[6]

However, in *White v. County of Orange*,[7] the court held the county vicariously liable for threats by a deputy sheriff to rape and murder a motorist he had stopped. In such instance, the deputy used his authority as a law enforcement officer to commit the offenses. The *White* court concluded that "the wrongful acts flowed from the very exercise of this authority. [¶] It follows that the employer/government must be responsible for acts done during the exercise of this authority."[8] The focus is on whether the assault arose out of the exercise of job-created law enforcement authority over the plaintiff, not whether the officer's activity was characteristic or foreseeable.[9]

Here, the sexual activity in question did not arise from an officer exercising his job-created law enforcement authority over the victims to force or coerce them to commit sexual acts. Rather, plaintiffs became infatuated with Boyd, pursued him, and consented to his sexual acts. Boyd's sexual misconduct thus does not support vicarious liability on the part of the city or police department. While the sexual activity may have been foreseeable, the illicit sexual acts did not arise out of the exercise of Boyd's job-created authority over plaintiffs. The trial court correctly sustained defendants' demurrers to the vicarious liability causes of action.[10]

In *John R. v. Oakland Unified School Dist.*, the California Supreme Court rejected a junior high student's vicarious liability claim against a school district. The claim arose from a teacher's sexually molesting the plaintiff. In concluding there was no vicarious liability, the court considered the following three policy objectives of imposing vicarious liability: "(1) to

---

[4] *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 448 [256 Cal.Rptr. 766, 769 P.2d 948].

[5] *Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377 [97 Cal.Rptr.2d 12].

[6] *Juarez v. Boy Scouts of America, Inc., supra*, 81 Cal.App.4th at page 394.

[7] *White v. County of Orange* (1985) 166 Cal.App.3d 566 [212 Cal.Rptr. 493].

[8] *White v. County of Orange, supra*, 166 Cal.App.3d at page 571.

[9] *John R. v. Oakland Unified School Dist., supra*, 48 Cal.3d at page 449.

[10] *John R. v. Oakland Unified School Dist., supra*, 48 Cal.3d 438.

prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury."[11]

As the court concluded in *John R. v. Oakland Unified School Dist.*, here, the objective of accident prevention is better addressed by subjecting defendants to liability only for their own direct negligence, rather than imposing vicarious liability, particularly since imposing vicarious liability might deter police departments from sponsoring explorer programs.[12] Also, as the court found in *John R.*, the objective of assuring plaintiffs' compensation is not a weighty factor since compensation may be achieved through proving direct negligence.[13] Liability based on direct negligence provides a strong incentive for defendants to implement procedures guarding against sexual misconduct.

As to the reasonable assurance of broad and equitable distribution of the losses among defendants, the connection between the authority conferred, if any, and "the abuse of that authority to indulge in personal, sexual misconduct is simply too attenuated to deem a sexual assault as falling within the range of risks allocable" to defendants.[14] The connection is "not great enough to persuade us that vicarious liability should attach here" for Boyd's personal tort since he exercised no job-conferred authority over plaintiffs when he engaged in sexual acts with them.[15]

The plaintiffs rely on *Mary M. v. City of Los Angeles*[16] as support for vicarious liability but that case is not on point. In *Mary M.* an on-duty police officer stopped a woman, who had been drinking, for erratic driving, and ordered her in his patrol car, drove her home, and raped her. The California Supreme Court held that the city was vicariously liable for the officer's misconduct.[17]

The court in *Mary M.* stated that decisions "have recognized, at least implicitly, that vicarious liability is an appropriate method to ensure that

---

[11]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at page 209; *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1013 [47 Cal.Rptr.2d 478, 906 P.2d 440]; *John R. v. Oakland Unified School Dist., supra,* 48 Cal.3d at pages 451-452.

[12]*John R. v. Oakland Unified School Dist., supra,* 48 Cal.3d at page 451.

[13]*John R. v. Oakland Unified School Dist., supra,* 48 Cal.3d at page 451.

[14]*John R. v. Oakland Unified School Dist., supra,* 48 Cal.3d at page 452.

[15]*John R. v. Oakland Unified School Dist., supra,* 48 Cal.3d at page 452; *Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at page 1017.

[16]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d 202.

[17]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at page 207.

victims of police misconduct are compensated,"[18] and "[t]he cost resulting from misuse of that power should be borne by the community, because of the substantial benefits that the community derives from the lawful exercise of police power."[19] But here, the officer was not invoking his police power when he committed the sexual misconduct. He was supervising and training police explorers who voluntarily sought out his company and consented to his sexual advances. There was no use of law enforcement authority or force.

The instant case is more akin to the *John R.* case[20] involving a teacher-student relationship, since Boyd was plaintiffs' explorer adviser and trainer when the sexual misconduct occurred. This case is also analogous to *Farmers Ins. Group v. County of Santa Clara*,[21] in which three female deputy sheriffs sued and prevailed in an action against Santa Clara County for sexual harassment by a male deputy sheriff. The offending deputy and his insurer sought indemnity from the county. The trial court granted the county's summary judgment motion on the ground the deputy sheriff's conduct was outside the scope of his employment as a matter of law.

The California Supreme Court in *Farmers Ins.* agreed and upheld the trial court ruling that there was no vicarious liability, reasoning that the deputy's misconduct was motivated by personal reasons unrelated to his job duties, and directly violated the county's sexual harassment policy.[22] The court further concluded the deputy's power over the plaintiffs, even as a supervisor and trainer of one of the plaintiffs, was in no way comparable to the extraordinary power police officers exercise over members of the public. The court also concluded that imposing vicarious liability did not further policy justifications for vicarious liability.

The *Farmers* court noted that, in the context of an employee's sexual misconduct, the employer is not vicariously liable for such misconduct, "except where sexual misconduct by on-duty police officers against members of the public is involved."[23] Here, as in *Farmers*, the officer's sexual misconduct was not against a member of the general public. It was against individuals who worked with Boyd and were trained and supervised by him.

The fact that Boyd supervised and trained the plaintiffs was not a sufficient basis for applying vicarious liability. As explained in *Farmers*, "*Mary M., supra*, 54 Cal.3d 202, did not suggest that an employer may be vicariously liable for an employee's misconduct whenever there is an abuse of a

---

[18]*Mary M. v. City of Los Angeles, supra*, 54 Cal.3d at page 216.
[19]*Mary M. v. City of Los Angeles, supra*, 54 Cal.3d at page 217.
[20]*John R. v. Oakland Unified School Dist., supra*, 48 Cal.3d 438.
[21]*Farmers Ins. Group v. County of Santa Clara, supra*, 11 Cal.4th 992.
[22]*Farmers Ins. Group v. County of Santa Clara, supra*, 11 Cal.4th at pages 1007-1008.
[23]*Farmers Ins. Group v. County of Santa Clara, supra*, 11 Cal.4th at page 1006.

job-created, hierarchical relationship in which the employee is afforded a high degree of authority over the victim. . . . [F]or purposes of respondeat superior, employees do not act within the scope of employment when they abuse job-created authority over others for purely personal reasons."[24]

As in *Farmers*, the on-duty police officer exception does not apply here. Although Boyd was acting as an on-duty police officer during the majority of his sexual misconduct, his relationship with plaintiffs was that of a supervisor or coworker rather than that of a police officer exercising law enforcement authority over a member of the general public. And Boyd's sexual acts with plaintiffs were undertaken solely for Boyd's and plaintiffs' personal gratification and had no purpose connected to their employment.

The connection between the law enforcement authority conferred on Boyd to carry out his law enforcement duties is simply too attenuated to deem his sexual misconduct as falling within the range of risks allocable to his employer.[25] As noted in *Farmers*, " '[i]f an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior.' [Citations.]"[26]

█ In *Farmers* the court ruled as a matter of law that there was no vicarious liability: " 'Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when "the facts are undisputed and no conflicting inferences are possible." ' "[27] █ Here also we conclude as a matter of law, based on the facts alleged in the third amended complaint, that plaintiffs failed to allege vicarious liability.

### 3.  *Summary Judgment*

Plaintiffs argue that triable issues of material fact exist as to whether defendants were negligent in failing to protect plaintiffs from being sexually exploited and as to whether defendants breached the BSA charter agreement.

### A.  *Standard of Review*

Our de novo review is guided by Code of Civil Procedure section 437c, which provides in subdivisions (c) and (f) that a motion for summary

---

[24]*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at pages 1012-1013.

[25]*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at page 1007.

[26]*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at page 1007.

[27]*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at page 1019.

judgment or adjudication may only be granted when, considering all of the evidence set forth in the papers and all inferences reasonably deducible therefrom, it has been demonstrated that there is no triable issue as to any material fact and the cause of action has no merit. We first look to the pleadings and decide whether the defendant has presented facts to negate an essential element of, or to establish a defense to, each cause of action framed by the complaint. If so, we then determine whether the plaintiff has demonstrated the existence of a triable, material issue of fact.[28]

## B. *Negligence*

Plaintiffs claim there was a triable issue of fact as to whether defendants were negligent in failing to take sufficient steps to prevent sexual exploitation.

### (1) *Discretionary Act Immunity*

Defendants argue they are immune from liability under Government Code sections 820.2 and 815.2, subdivision (b). Government Code sections 815.2 and 820.2, read together, create what has been called "discretionary act immunity." Government Code section 815.2, subdivision (b) provides: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Government Code section 820.2 provides, as relevant here: "[A] public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Defendants claim the alleged negligent acts are protected discretionary acts subject to immunity. We disagree. "[N]ot all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of [Government Code] section 820.2."[29] " '[I]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail.' [Citations.]"[30]

---

[28]*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1121 [84 Cal.Rptr.2d 361].

[29]*Barner v. Leeds* (2000) 24 Cal.4th 676, 684-685 [102 Cal.Rptr.2d 97, 13 P.3d 704].

[30]*Johnson v. State of California* (1968) 69 Cal.2d 782, 788 [73 Cal.Rptr. 240, 447 P.2d 352], quoting *Ham v. County of Los Angeles* (1920) 46 Cal.App. 148, 162 [189 P. 462].

■ Immune discretionary acts involve planning and policymaking whereas unprotected ministerial acts involve operational functions of government.[31] "Immunity is reserved for those *'basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly.' [Citation.] Such 'areas of quasi-legislative policy-making . . . are sufficiently sensitive' [citation] to call for judicial abstention from interference that 'might even in the first instance affect the coordinate body's decision-making process' [citation]. [¶] On the other hand, . . . there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated. [Citation.]"[32] "The scope of the discretionary act immunity 'should be no greater than is required to give legislative and executive policymakers sufficient breathing space in which to perform their vital policymaking functions.' [Citation.]"[33]

■ Here, the alleged negligent conduct consisted of MPD employees, such as Sergeant Attebery, failing to take protective measures to deter sexual exploitation of plaintiffs, such as adequately supervising Boyd and plaintiffs and enforcing BSA and MPD explorer rules and regulations when it became apparent plaintiffs were infatuated with Boyd and Boyd and plaintiffs were spending unusual amounts of time together.

The MPD explorer program manual contains a provision stating that participants shall not "show a display of affection beyond what is considered general or common courtesy toward a member of the opposite sex while in attendance at a Post sponsored function or assignment . . . ." Certainly, this included the acts of physical intimacy between Boyd and plaintiffs. Also, the MPD explorer program bylaws state that "The Murrieta Police Department Law Enforcement Explorer Post [program] shall be guided by the procedure[s] of the Boy Scouts of America, Inland Empire Council, Exploring Division," and, as stated in the declaration of Craig Lesh, a former district BSA director, BSA had a policy of prohibiting fraternization between advisers and explorers.

The MPD manual also states: "ONLY MEMBERS OVER THE AGE OF EIGHTEEN (18) WILL BE ALLOWED IN THE FIELD AFTER 2300 HOURS [11:00 p.m.]. Members seventeen (17) years old or younger will be out of the field by 2200 hours [10:00 p.m.] on school nights, and 2300 hours

---

[31]*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 981 [42 Cal.Rptr.2d 842, 897 P.2d 1320].

[32]*Caldwell v. Montoya, supra,* 10 Cal.4th at page 981, quoting *Johnson v. State of California, supra,* 69 Cal.2d at pages 793, 794, 796.

[33]*Barner v. Leeds, supra,* 24 Cal.4th at pages 685, quoting *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 445 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].

[11:00 p.m.] on weekend evenings or during the summer. Members eighteen (18) years may ride the graveyard shift with the approval of the Watch Commander. On non-school nights only, members may, with the Watch Commander's approval, be used to secure a crime or collision scene beyond the above stated time restraints, if under the direct supervision of a sworn officer."

These provisions were violated and there was sufficient evidence establishing that the MPD, including Sergeant Attebery, knew or should have known of the violations or that they were likely to occur, but did not intervene to deter such violations or enforce the MPD rules and regulations.

Defendants are not immune from liability since the MPD's acts and omissions in failing to follow explorer program rules and guidelines involved ministerial conduct rather than discretionary planning and policy-making acts.

### (2) Duty of Care

Defendants alternatively argue they cannot be found liable for negligence because, as a matter of law, they did not owe plaintiffs a duty of care. An action for negligence requires a showing that the defendant breached a legal duty owed to the plaintiff, and that the breach was a proximate or legal cause of the plaintiff's injuries.[34]

Relying on *Juarez v. Boy Scouts of America, Inc.*,[35] plaintiffs argue defendants owed the explorers a duty to protect them from sexual exploitation by MPD officers. In *Juarez* the plaintiff argued, and the court agreed, that the BSA and the local area BSA council, referred to collectively as "the Scouts," owed its scout members a duty to protect them from sexual molestation, and breached this duty by negligently training, educating and overseeing the troop's leaders and Boy Scouts. Proper training and oversight, consistent with the BSA's youth protection guidelines, allegedly would have prevented the molestation.

The determination of whether there is a duty is a question of law.[36] In concluding there was a duty to protect the scouts, the *Juarez* court applied

---

[34] *Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at page 411.

[35] *Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th 377.

[36] *Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at pages 401-402; *Ma v. City and County of San Francisco* (2002) 95 Cal.App.4th 488, 503 [115 Cal.Rptr.2d 544].

the *Rowland*[37] multi-element duty assessment test in which the court considered the following factors: "(1) the foreseeability of harm to the injured party; (2) the degree of certainty that the injured party suffered harm; (3) the closeness of the connection between the defendant's conduct and the injury suffered; (4) the moral blame attached to the defendant's conduct; (5) the policy of preventing future harm; (6) the extent of the burden to the defendant; and (7) the consequences to the community of imposing a duty to exercise care, with resulting potential liability."[38] In addition, "Where public entities are defendants, the courts will consider additional factors of whether there is liability insurance available to protect the public entity against the financial burden of imposing a duty, the extent of the agency's powers, the role imposed on it by law, and limitations imposed on the agency by budget."[39]

As explained in *Juarez*, "The goal of applying the *Rowland* factors has been described as the ascertainment of whether 'the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' [Citation.] . . . ' " " '[D]uty' is not an immutable fact of nature ' "but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' [Citations.]" ' "[40]

Here, the *Rowland* factors support a finding of duty. Boyd's sexual involvement with plaintiffs was reasonably foreseeable. The degree of foreseeability was high enough to charge defendants with the duty to take action to protect plaintiffs from sexual exploitation.[41] Boyd and plaintiffs were spending an unusual amount of time together, going on frequent one-on-one ride-alongs late at night. Plaintiffs were also frequently calling Boyd at the station and often waited for him at the station for a ride home. Sgt. Attebery was aware of this activity and plaintiffs' infatuation with Boyd.

In addition, the foreseeability of explorer advisers' sexually exploiting explorers is acknowledged in the BSA explorer leader handbook, which

[37]*Rowland v. Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].

[38]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at page 401; *Ma v. City of San Francisco, supra,* 95 Cal.App.4th at page 504; *Rowland v. Christian, supra,* 69 Cal.2d at pages 112-113.

[39]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at page 401, footnote 8, citing *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 268 [80 Cal.Rptr.2d 196]; *Ma v. City of San Francisco, supra,* 95 Cal.App.4th at page 504.

[40]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at pages 401-402.

[41]*Ma v. City and County of San Francisco, supra,* 95 Cal.App.4th at page 504.

contains a section entitled "Explorer Advisor Section," which in turn contains a section entitled "Youth Protection." In that section, the handbook states that "An important component of BSA's Youth Protection emphasis is adherence to the policies, which will ensure that children participating in the Scouting program are safe from abuse." The handbook states, under the heading "Fraternization," "Because the Exploring program is designed for young adults, there is often little difference in the ages of the post Advisors and the post members. It has been found that maintaining a close social relationship, as in dating, between registered adult leaders and registered Explorers is disruptive to the post's program and is therefore not permitted by the Boy Scouts of America."

The handbook further states, under the heading "Creating External Barriers," that "further protection for children can be structured into the program. The following policies have been adopted to provide additional security for youths in the program. . . ." The policies include "[t]wo-deep leadership" and "[n]o one-on-one contact . . . except for authorized ride-along programs."

We recognize that the BSA permitted the MPD to adopt its own rules and regulations for operating its explorer program, which were stated in the MPD manual. Nevertheless, the BSA handbook procedures are significant in that they reflect the general awareness of the potential for explorer advisers, such as Boyd, to abuse explorers if certain protective procedures are not followed. As stated in *Juarez,* "We are not the first to conclude that children engaged in organized group overnight activities are at risk of foreseeable sexual abuse."[42] Similarly, here, plaintiffs were permitted to participate in frequent one-on-one ride-alongs late at night. Such activity, along with other frequent interaction with Boyd, created a risk or foreseeability that Boyd would become sexually involved with plaintiffs.

While foreseeability of harm is a critical element of duty, " 'A court may find that no duty exists, despite foreseeability of harm, because of other factors and considerations of public policy.' "[43] Here, in addition to foreseeability, the factors of "(2) the degree of certainty that the injured party suffered harm; (3) the closeness of the connection between the defendant's conduct and the injury suffered; [and] (4) the moral blame attached to the defendant's conduct"[44] support a determination of duty.

---

[42]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at page 404.

[43]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at page 405.

[44]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at page 401, quoting *Adams v. City of Fremont, supra,* 68 Cal.App.4th at pages 267-268, citing *Rowland v. Christian, supra,* 69 Cal.2d at pages 112-113.

Defendants argue plaintiffs did not suffer injury since plaintiffs pursued Boyd and consented to his sexual acts. But it is well documented that sexual abuse of minors causes significant emotional trauma to minors, with its related societal costs,[45] and, no doubt, for this reason, such conduct constitutes a felony. There is also a sufficiently close connection between defendants' conduct of failing to protect plaintiffs and Boyd's sexual exploitation of plaintiffs. Had the MPD restricted plaintiffs' contact with Boyd while on the job, particularly when there were signs plaintiffs were infatuated with him, it would have been much less likely that plaintiffs and Boyd would have become sexually involved.

As to moral blame, certainly as a law enforcement agency and sponsor of a BSA program involving minors, defendants had a moral obligation to protect its explorers, including implementing reasonable rules and restrictions, such as those set forth in the BSA handbook, and intervening when there was an apparent risk of sexual exploitation by an explorer adviser. MPD failed to do so. For instance, MPD's own explorer manual provided that explorers under the age of 18 were not permitted to be out in the field late at night on ride-alongs, but the MPD did not adhere to this rule.

The remaining enumerated duty factors, "(5) the policy of preventing future harm; (6) the extent of the burden to the defendant; and (7) the consequences to the community of imposing a duty to exercise care, with resulting potential liability,"[46] also favor imposing a duty on defendants to protect its explorers from sexual abuse. As a law enforcement agency, preventing future harm to minors is certainly appropriate and could be accomplished by implementing the protective measures stated in the Youth Protection section of the BSA explorer handbook, as well as adhering to the MPD's own ride-along restrictions. Doing so does not appear to be unduly burdensome or costly, and imposing on the MPD a duty to exercise care, with resulting potential liability, would foster a greater sense of community confidence in and respect for the MPD. We conclude under the *Rowland* analysis that the MPD had a duty to protect its explorers by not fostering an environment which would encourage sexual exploitation and by taking reasonable protective measures to prevent its explorers from becoming victims of sexual exploitation by the MPD's own officers.

---

[45]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at page 405.

[46]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at page 401, quoting *Adams v. City of Fremont, supra,* 68 Cal.App.4th at pages 267-268, citing *Rowland v. Christian, supra,* 69 Cal.2d at pages 112-113.

## (3)   *Special Relationship*

Relying on *Thorn v. City of Glendale*,[47] defendants argue they did not owe plaintiffs any duty to protect them from harm because there was no special relationship between them and plaintiffs. In *Thorn*, a city fire marshal surreptitiously set business property on fire while conducting an inspection. He was convicted of arson, and the property owner sued the city for vicarious liability and negligent supervision of the fire marshal. The trial court sustained the city's demurrer and dismissed the complaint. The *Thorn* court upheld the ruling, reasoning that, as to the negligence claim, there was no statutory authority for the claim, the city was immune from liability, and there was no duty owed to plaintiffs because there was no special relationship between the plaintiffs and the city.[48]

Defendants also cite *Van Ort v. Estate of Stanewich*,[49] in which the court also found there was no public entity liability because there was no special relationship. In *Van Ort*, a deputy sheriff robbed and assaulted third parties a few days after the deputy had assisted in a job-related narcotics search of the victims' home and discovered a safe containing jewelry, cash, and coins. The officer returned several days later on his own and robbed, attacked, and tortured the victims. The victims sued the county and sheriff's department in federal court for constitutional rights violations, vicarious liability, and negligent hiring and supervision.

The *Van Ort* court noted there was no case law supporting direct liability against a public entity based on negligent hiring and supervision, other than *Virginia G. v. ABC Unified School Dist.*,[50] and that case was distinguishable because in *Virginia G.* there was a special relationship whereas in *Van Ort* there was none.[51]

In *Virginia G. v. ABC Unified School Dist.*,[52] a teacher sexually molested a student. The student sued the school district based on negligent hiring and supervision of the teacher. The trial court granted the school district's motion for judgment on the pleadings and the *Virginia G.* court reversed the ruling on the ground the plaintiff might be able to state a cause of action against the district for negligent hiring and supervision.

---

[47]*Thorn v. City of Glendale* (1994) 28 Cal.App.4th 1379 [35 Cal.Rptr.2d 1].
[48]*Thorn v. City of Glendale, supra,* 28 Cal.App.4th at page 1385.
[49]*Van Ort v. Estate of Stanewich* (9th Cir. 1996) 92 F.3d 831.
[50]*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848 [19 Cal.Rptr.2d 671].
[51]*Van Ort v. Estate of Stanewich, supra,* 92 F.3d at page 841.
[52]*Virginia G. v. ABC Unified School Dist., supra,* 15 Cal.App.4th 1848.

The *Virginia* court explained that the school district owed its students a duty to take all reasonable steps to protect its students based on its special relationship with its students.[53] ██ " 'As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection." [Citations.]' [Citation.]"[54]

██ In *Juarez* the court concluded there was a special relationship between BSA and the plaintiff Boy Scout, giving rise to a duty to act.[55] The *Juarez* court noted, however, that there is a "expanding view in tort jurisprudence that the use of special relationships to create duties has been largely eclipsed by the more modern use of balancing policy factors enumerated in *Rowland*."[56] While considering the alternative special relationship test in determining duty, the *Juarez* court explained: "[W]e are reluctant to rely on the special relationship doctrine per se as the analytical underpinning for our conclusion that a duty of care was owed by the Scouts to Juarez. However, we note that cases exploring this alternative theory of tort duty have found a special relationship, giving rise to a duty to protect children against a known risk that they might be sexually molested. One jurist has described the special relationship between the child participant and youth organization in terms particularly pertinent to this case: 'The mission of youth organizations to educate children, the naiveté of children, and the insidious tactics employed by child molesters dictate that the law recognize a special relationship between youth organizations and the members such that the youth organizations are required to exercise reasonable care to protect their members from the foreseeable conduct of third persons.' [Citation.] [¶] While the multifactored, policy-driven *Rowland* analysis provides a sufficiently robust doctrinal basis to support imposition of a duty, were we to rely on this alternative analysis, we, too, would conclude that a special relationship existed between the Scouts and Juarez giving rise to a duty to protect him from harm caused by the criminal conduct of third parties."[57]

Likewise, here, we conclude there was a special relationship between defendants, as sponsors of the MPD explorer program, and the explorers. Defendants thus owed plaintiffs a duty of care to protect them from foreseeable harm based on the special relationship doctrine, as well as under the *Rowland* analysis.

---

[53]*Virginia G. v. ABC Unified School Dist., supra,* 15 Cal.App.4th at page 1853.

[54]*Virginia G. v. ABC Unified School Dist., supra,* 15 Cal.App.4th at page 1853.

[55]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at page 410.

[56]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at pages 410-411, citing *Adams v. City of Fremont, supra,* 68 Cal.App.4th at pages 285-287.

[57]*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at page 411.

### (4) *Breach of Duty*

Defendants argue that, even if there was a duty, there was no breach because plaintiffs could not prove that defendants knew or should have known Boyd posed an undue risk of harm or that he was engaging in sexual misconduct. We disagree.

There was ample evidence raising a triable issue as to defendants' awareness that Boyd posed a risk of becoming sexually involved with plaintiffs. As discussed above, there was evidence Sergeant Attebery and others in the MPD knew plaintiffs were infatuated with Boyd. Attebery knew plaintiffs had gone on numerous ride-alongs with Boyd; the ride-alongs were often late at night; and plaintiffs often waited for Boyd at the station for a ride home. Attebery also had seen Boyd dance with one of the plaintiffs at an MPD function and Boyd mentioned to Attebery that plaintiffs had nice bodies, indicating a libidinous interest in plaintiffs. In addition, plaintiffs complained to Attebery that an explorer was spreading rumors that plaintiffs were "D.O.D.," that is, "drooling over Derick." The MPD dispatcher and explorer adviser, Vicky Day, noticed that plaintiffs were infatuated with Boyd and were frequently calling him at the station. Despite such signs of foreseeable intimacy between Boyd and plaintiffs, defendants, particularly Sergeant Attebery, did nothing to protect plaintiffs from sexual exploitation. Adding fuel to the fire, Sergeant Attebery at one point even confided in Boyd that he had not noticed how large Jane Doe 3's chest was.

Evidence of such circumstances was sufficient to raise a triable issue as to whether defendants knew or should have known of the risk that Boyd would sexually exploit plaintiffs, and whether defendants breached that duty by not taking any protective measures, such as minimizing plaintiffs' contact with Boyd.

## C. *Breach of Contract*

■ The trial court granted summary judgment as to plaintiffs' breach of contract causes of action in part on the ground plaintiffs' government claim did not encompass plaintiffs' breach of contract causes of action and therefore their contract claims were barred. The contract in question is the BSA charter agreement entered into between BSA and the city permitting the MPD to sponsor and operate an explorer program.

Plaintiffs allege in their complaint that the charter required defendants to follow the BSA rules and regulations contained in the BSA explorer leader handbook, including those stated in the Youth Protection section of the BSA

explorer leader handbook. Defendants also failed to abide by the MPD's own explorer program rules and procedures. Defendants allegedly breached the charter agreement by failing to prevent one-on-one contact between plaintiffs and Boyd, and by failing to provide proper training, supervision, and monitoring of Boyd. This allegedly resulted in Boyd's sexually abusing plaintiffs.

Plaintiffs' governmental claims state that plaintiffs' claims are based on personal injuries sustained from September 1997 through January 18, 1998, as a result of sexual contact and other related acts committed by Boyd while acting in the course and scope of his employment as a police officer and explorer adviser. Boyd used his job position to sexually exploit, harass, and discriminate against plaintiffs. Plaintiffs allege that, as Boyd's employer, defendants were thus vicariously liable for such acts. Plaintiffs further state in their government claims that defendants negligently hired, trained, and supervised Boyd, and knew or should have known he was sexually abusing plaintiffs or such abuse was likely to occur, but failed to take action to prevent it.

Plaintiffs contend that their government claims contained sufficient allegations to encompass their breach of contract causes of action. We disagree.

Under Government Code section 945.4, ". . . no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, . . ."

The claim requirement serves the important function of allowing the public entity to investigate the claim and to settle meritorious lawsuits.[58] To these ends, a claim filed in anticipation of litigation must set forth all the legal and factual bases that will be asserted in any subsequent lawsuit: " ' "If a plaintiff relies on more than one theory of recovery against the [governmental agency], each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer [summary judgment] if it alleges a factual basis for recovery which is not fairly reflected in the

---

[58]*San Diego Unified Port Dist. v. Superior Court* (1988) 197 Cal.App.3d 843, 847 [243 Cal.Rptr. 163].

written claim." [Citations.]' "[59] A contract-based cause of action is barred if it exceeds the scope of a governmental claim because the claim does not allow the public entity to determine if a duty based on contract exists.[60]

Here, plaintiffs' government claims do not mention the charter agreement or any contract breach. Plaintiffs' government claims cannot be construed to include the breach of contract causes of action since they are insufficient to put defendants on notice of such claims. The trial court thus correctly found that the breach of contract claims were barred due to plaintiffs' failure to comply with the claim filing prerequisites.

Plaintiffs' reliance on *White v. Superior Court*[61] is misplaced. First, *White* involved tort, not contract liability. Second, in *White* the court held that the tort causes of action and the governmental claims were predicated on the same fundamental facts. In contrast, here, plaintiffs' contract claims involved significant facts that were not mentioned in the government claim. There was no mention of the charter agreement, that it had been breached, or the terms breached. The trial court thus properly granted summary judgment as to the fifth cause of action for breach of contract because the underlying facts were not fairly reflected in plaintiffs' governmental claims.

### 4. *Disposition*

The judgment is reversed with regard to the trial court's ruling granting summary judgment and affirmed as to the trial court's ruling sustaining defendants' demurrer to the second, third, and fourth causes of action. As to defendants' alternative request for summary adjudication, the trial court is directed to deny summary adjudication as to plaintiffs' first cause of action for negligence in its entirety, and grant summary adjudication as to the fifth cause of action for breach of contract. Plaintiffs are awarded their costs on appeal.

McKinster, Acting P. J., and Ward, J., concurred.

A petition for a rehearing was denied October 23, 2002, and respondents' petition for review by the Supreme Court was denied December 18, 2002.

---

[59] *Fall River Joint Unified School Dist. v. Superior Court* (1988) 206 Cal.App.3d 431, 434 [253 Cal.Rptr. 587].

[60] *Crow v. State of California* (1990) 222 Cal.App.3d 192, 201-202 [271 Cal.Rptr. 349].

[61] *White v. Superior Court* (1990) 225 Cal.App.3d 1505 [275 Cal.Rptr. 706].