[No. E030933. Fourth Dist., Div. Two. Mar. 14, 2003.]

K. G., Plaintiff and Appellant, v.
COUNTY OF RIVERSIDE, Defendant and Respondent.

**COUNSEL**

Oppenheimer Wolff & Donnelly, Donald G. Norris, Murray J. Robertson and Jorge Gonzalez for Plaintiff and Appellant.

Kinkle, Rodiger and Spriggs, Bruce E. Disenhouse and Marc S. Hurd for Defendant and Respondent.

**OPINION**

**GAUT, J.**—This action arises out of a Riverside County Sheriff's deputy molesting his stepdaughter (plaintiff). Plaintiff sued the deputy's employer,

the County of Riverside (the County), based on vicarious liability. Plaintiff appeals from a nonsuit judgment on her vicarious liability claim against the County.

Plaintiff contends the trial court erred in granting nonsuit. She claims there was substantial evidence that her stepfather, Charles B., abused his official authority as a law enforcement officer when he molested her. Therefore his sexual misconduct occurred within the scope of his employment and supported vicarious liability against the County. Plaintiff argues the trial court erroneously rejected her proposed special instructions on respondeat superior and ruled it would use the County's instructions. As a consequence, plaintiff conceded she was unable to meet her burden of proof and requested the court to grant the County's nonsuit motion.

In the event this court reverses judgment and the case is retried, plaintiff further requests this court to provide guidance on various evidentiary rulings plaintiff claims were erroneous.

 We conclude the trial court did not commit instructional error and therefore affirm the judgment.

## 1. *Facts and Procedural Background*

The following facts are taken from plaintiff's trial testimony and allegations in her complaint.

B. married plaintiff's mother when plaintiff was three and a half years old. In December 1993, when plaintiff was 12, B. began molesting her. He fondled her breasts and her vagina, and told her not to tell anyone. B. fondled her on several subsequent occasions and then began having oral sex and intercourse with her. B. continued sexually abusing plaintiff until May 1997, when plaintiff was 15 and a half.

B. sexually abused plaintiff three or four times a week. The abuse occurred at her home, and in motels, parks, and at the home of W. J., B.'s friend who was also an officer, and also in B.'s patrol car. When plaintiff was 14 years old, B. took her to J.'s home and gave her marijuana and liquor. B. and J. then had sex with her. B. told J. plaintiff was a stripper and introduced her by a different name. She had sex with J. on three occasions, once at his home and twice at a motel. She also had sex with someone named Junior and with two females. B. told her they were friends of his and he wanted her to have sex with them.

Plaintiff complied with B.'s sexual demands and did not tell anyone until several years later. She was afraid of B. because he was an officer and feared

he would send her and her brother to a foster home if she told anyone. She also thought her mother would not believe her. B. told her that if she reported him, he would write up the report and nothing would happen to him. B. was also physically violent with her when she refused his demands.

On one occasion, when she was 14 years old, B. took her to a hotel. There were 12 or 15 men there wearing sheriff's uniforms. At their request, she stripped and was fondled. She was too drunk and high at the time to remember much.

Plaintiff's mother deferred discipline of plaintiff to B. On one occasion, when plaintiff was accused of sexual improprieties at school, B. went to the school in his law enforcement uniform and, to avoid revelation of his own sexual misconduct, informed the school he would personally handle the matter.

When plaintiff was 15 and a half years old, she told her mother B. had been sexually abusing her. In 1998, B. and J. were convicted of sexually abusing plaintiff.

In June 1998, plaintiff and her brother, whom B. also allegedly molested, filed this action against B., J., and the County, alleging assault, battery, false imprisonment, intentional infliction of emotional distress, violation of Civil Code section 51.7, and negligent supervision, hiring or retention. Plaintiff alleges in her amended complaint that B. and J. sexually abused her within the scope of B.'s and J.'s employment as sheriff's deputies and therefore the County was vicariously liable for their wrongful acts.

Default judgments were entered against B. and J. The trial court bifurcated liability from damages, and the matter proceeded to trial on plaintiff's vicarious liability claim against the County. The County moved for nonsuit following plaintiff's opening statement and again after plaintiff completed her case. The trial court denied the motions. At the end of trial, the court heard argument on the parties' proposed special instructions on respondeat superior. The court rejected plaintiff's instructions and accepted the County's.

Plaintiff then requested the trial court to grant the County's previously denied nonsuit motion, concluding that, based on the instructions the court intended to give, plaintiff could not prevail. The trial court granted nonsuit as to the County and entered judgment for the County.

### 2. *Standard of Review*

Plaintiff is estopped from objecting to the trial court's granting nonsuit since, in effect, she stipulated to the court granting nonsuit and invited error,

if any, in granting the motion. ■ "Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error. [Citations.] But the doctrine does not apply when a party, while making the appropriate objections, acquiesces in a judicial determination. [Citation.] As this court has explained: ' "An attorney who submits to the authority of an erroneous, adverse ruling after making appropriate objections or motions, does not waive the error in the ruling by proceeding in accordance therewith and endeavoring to make the best of a bad situation for which he was not responsible." ' [Citations.]"[1]

■ Here, plaintiff agreed to the court entering nonsuit against the County, conceding that, "as a matter of law on the state of the evidence, we cannot, . . . given the instructions the Court is proposing to give, and the denial or the rejection of the instructions we have proffered, we don't believe that we can make the case." While this court is thus precluded from considering whether the trial court erred in granting nonsuit, this court may consider whether there was instructional error, since plaintiff objected to the trial court's jury instruction rulings and, as a consequence, felt compelled to agree to nonsuit.

Accordingly, we limit our review to the issue of whether the trial court's rulings on the respondeat superior instructions constitute reversible error. ■ "In reviewing any claim of instructional error, we must consider the' jury instructions as a whole, and not judge a single jury instruction in artificial isolation out of the context of the charge and the entire trial record. [Citations.]"[2]

### 3. *Discussion*

■ The trial court rejected plaintiff's instructions as containing inaccurate statements of the law and used the County's proposed jury instructions. In resolving whether the court committed instructional error, we must consider whether the proposed jury instructions correctly stated the applicable law.[3]

---

[1]*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212-213 [285 Cal.Rptr. 99, 814 P.2d 1341].
[2]*People v. Dieguez* (2001) 89 Cal.App.4th 266, 276 [107 Cal.Rptr.2d 160].
[3]*People v. Mills* (1991) 1 Cal.App.4th 898, 918 [2 Cal.Rptr.2d 614].

## A. *General Respondeat Superior Principles*

In *Mary M. v. City of Los Angeles*,[4] relied heavily upon by plaintiff, a police officer raped a woman after detaining her for driving erratically under the influence of alcohol. The *Mary M.* court held the city was vicariously liable for its police officer's sexual misconduct. Plaintiff in the instant case claims her proposed instructions correctly stated the law under *Mary M.* Plaintiff's reliance on *Mary M.* is misplaced. *Mary M.* is distinguishable in a number of significant ways.

The California Supreme Court in *Mary M.* stated the following general respondeat superior principles: "Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment. [Citation.] . . . Respondeat superior is based on ' "a deeply rooted sentiment" ' that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities. [Citations.] [¶] . . . [¶] . . . 'A risk arises out of the employment when "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer. [Citation.]" ' [Citations.]"[5]

The court further noted in *Mary M.* that "Tortious conduct that violates an employee's official duties or disregards the employer's express orders may nonetheless be within the scope of employment. [Citations.] So may acts that do not benefit the employer [citation], or are willful or malicious in nature [citations]."[6]

In *Lisa M. v. Henry Mayo Newhall Memorial Hospital*,[7] our high court further elaborated that, "While the employee thus need not have intended to further the employer's interests, the employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the

---

[4]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d 202.

[5]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at pages 208-209; *Doe 1 v. City of Murrieta* (2002) 102 Cal.App.4th 899, 906 [126 Cal.Rptr.2d 213].

[6]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at page 209; *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296-297 [48 Cal.Rptr.2d 510, 907 P.2d 358].

[7]*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th 291.

employee's work."[8] The *Lisa M.* court explained that, for such nexus to exist, "the incident leading to injury must be an 'outgrowth' of the employment [citation]; the risk of tortious injury must be '"inherent in the working environment"' [citation] or '"typical of or broadly incidental to the enterprise [the employer] has undertaken"' [citation]. [¶] Looking at the matter with a slightly different focus, California courts have also asked whether the tort was, in a general way, foreseeable from the employee's duties. Respondeat superior liability should apply only to the types of injuries that '"as a practical matter are sure to occur in the conduct of the employer's enterprise."' [Citation.]"[9]

## B. *Plaintiff's Proposed Instructions*

Plaintiff submitted a special respondeat superior instruction, referred to as No. 43, which was premised on language in *Mary M.* The trial court informed plaintiff the court was inclined to reject the instruction on the ground it incorrectly stated the law as applied to the instant case. Plaintiff withdrew the instruction, revised it, renamed it special instruction No. 8; and resubmitted it. The trial court rejected it again on the ground it neither stated the holding in *Mary M.* nor correctly stated respondeat superior principles applicable to the instant case.

Special instruction No. 8 states: "Police officers occupy a unique position of trust in our society. They are responsible for enforcing the law and protecting society from criminal acts. [¶] An employer is liable for the wrongful acts of a police officer who, as the result of the exercise of his authority, causes injury even though the wrongful acts occurred without the employer's knowledge, were not for the benefit of the employer, were done solely for the personal benefit of the employee, and were done in violation of the employer's rules or grant of authority. [¶] A peace officer need not be on duty for you to determine that he was acting within the scope of his employment. If a peace officer made any use of official trappings or if the victim had knowledge of the attacker's connection to law enforcement and submitted accordingly, then you can find vicarious liability."

As the trial court noted, this instruction does not state the holding in *Mary M.* The *Mary M.* court stated the issue and holding in *Mary M.* as follows: "The issue in this case is: When a police officer on duty, by misusing his official authority, rapes a woman whom he has detained, can the public entity that employs him be held vicariously liable for his misconduct? We

---

[8]*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at page 297.
[9]*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at pages 298-299.

conclude that the employer can be held liable under the doctrine of respondeat superior."[10] After discussing the issue, the court concluded: "[W]e hold that when, as in this case, a police officer on duty misuses his official authority by raping a woman whom he has detained, the public entity that employs him can be held vicariously liable."[11]

The *Mary M.* court limited its holding to the particular facts of the case, which differ significantly from those in the instant case. The instant case involves a stepfather molesting his stepdaughter, a far cry from an officer, during the course of enforcing the law, detaining and raping a woman who was previously unknown to the officer.

Not only do the facts significantly differ from *Mary M.* in the instant case, but, in addition, the underlying rationale for the court's holding in *Mary M.* does not apply. In *Mary M.* the court concluded the officer's conduct "was not so divorced from his work that, as a matter of law, it was outside the scope of employment."[12] Such is not the case here. The relationship between B.'s work and his sexual abuse of plaintiff over two and a half years was so attenuated that a jury could not reasonably have concluded B. acted within the scope of employment. The fact that he controlled and intimidated plaintiff by threatening to use his authority as an officer against her if she did not cooperate and disclosed his criminal acts is not a sufficient nexus or basis for construing a personal family matter as job related and holding B.'s employer responsible.[13]

■ In *Mary M.* the court explained that the test for determining whether an employee has acted outside the scope of employment "is whether ' "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." ' "[14] To assist the court in that determination, the court must consider whether the following three policy objectives underlying respondeat superior liability would be achieved: (1) imposing liability on the employer to prevent recurrence of the tortious conduct by creating a strong incentive for vigilance by those in a position to guard against the evil to be prevented; (2) giving greater assurance of

---

[10]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at page 207.
[11]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at page 221.
[12]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at page 214.
[13]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at pages 213-214.
[14]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at page 214.

compensation to the victim; and (3) spreading the risk of loss among the beneficiaries of the enterprise.[15]

Here, imposing liability on the County would have little impact on preventing officers from molesting their own family members. Increased County supervision and vigilance over officers' family life and family relationships are not plausible consequences of imposing vicarious liability on the County.

Providing the victim greater assurance of compensation by imposing vicarious liability may be present in the instant case but cannot be assumed, as it has not been addressed in the court below or in the briefs.[16] "The second policy consideration is therefore also of uncertain import here; imposing vicarious liability is likely to provide additional compensation to some victims, but the consequential costs of ensuring compensation in this manner are unclear."[17]

The third policy consideration also does not provide sufficient justification for imposing vicarious liability. The public should not have to bear the risk of an officer molesting his own stepdaughter. Such risk was primarily attributable to the officer's lust and his and plaintiff's propinquity.[18] While B. capitalized on his inherent authority and power as an officer as a means of threatening his stepdaughter, spreading the risk of loss among the public for such offense is not warranted.

Regardless of whether B. committed some of the sexual misconduct on duty and or in his patrol car, as a matter of law we conclude the misconduct did not occur within the scope of B.'s employment. The sexual abuse is " ' "so *unusual or startling* that it would seem unfair to include the loss resulting from it among other costs of the employer's business," ' "[19] particularly since the public ultimately would have to pay such costs. It is not the type of conduct that may " 'fairly be regarded as typical or broadly incidental' "[20] to the enterprise of law enforcement. It did not arise out of nor was it in any way related to law enforcement.

Under the undisputed facts in this case, the trial court did not abuse its discretion in rejecting plaintiff's proposed special instructions, Nos. 8 and

[15]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at pages 214-216; *Thorn v. City of Glendale* (1994) 28 Cal.App.4th 1379, 1383 [35 Cal.Rptr.2d 1], citing *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 451 [256 Cal.Rptr. 766, 769 P.2d 948]; *Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at page 304.

[16]*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at page 305.

[17]*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at page 305.

[18]*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at page 301.

[19]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at page 217.

[20]*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at page 217.

43. The instructions contained inapplicable and misleading language as applied to this case.

Likewise, the trial court did not abuse its discretion in rejecting plaintiff's additional respondeat superior instructions, proposed special instructions Nos. 4 through 7. These instructions state:

"[No. 4] Conduct that violates an employee's express orders may nevertheless be within the scope of employment. So may acts that do not benefit the employer or are wilful or malicious in nature.

"[No. 5] The use of authority is incidental to the duties of a police officer. The County enjoys tremendous benefits from the public's respect for that authority. Therefore, it must suffer the consequences when the authority is abused.

"[No. 6] When a police officer on duty misuses his authority [to commit a sexual assault], the public entity that employs him can be held vicariously liable.

"[No. 7] A police officer acts in the scope of his employment if he uses his police authority while off duty."

While the instructions may have been appropriate in *Mary M.*, they were inappropriate in the instant case. The evidence established as a matter of law B.'s acts were not committed within the scope of employment.

We next consider whether the trial court abused its discretion in using the County's proposed special instructions, Nos. 1, 2, and 3. These instructions state: "[Special instruction No. 1] If an employee's misconduct is personal in nature, his mere presence at the place of employment and attendance to occupational duties before or after the misconduct, will not give rise to a cause of action against the employer under the doctrine of respondeat superior. For the purposes of this instruction, an act is personal if it is undertaken solely for the employee's personal gratification and had no purpose connected to his employment."

"[Special instruction No. 2] For the purposes of imposing liability under respondeat superior, an employee does not act within the scope of his employment when he abuses job created authority over others for purely personal reasons."

"[Special instruction No. 3] Sexual misconduct by an employee will not be considered to be related to his employment unless its motivating factors

were fairly attributable to work related events or conditions. If the misconduct was not motivated or triggered by anything in the employment activity, but was the result of mere lust, there is no liability for that misconduct on the part of the employer."

The first and second instructions quote language from *Farmers Ins. Group v. County of Santa Clara.*[21] In *Farmers*, three female deputy sheriffs sued and prevailed in an action against the Santa Clara County for sexual harassment by a male deputy sheriff. The offending deputy and his homeowner's insurance carrier sought indemnity from the county. The trial court granted the insurer summary judgment on the ground the deputy's conduct was outside the scope of his employment as a matter of law.[22]

In reaching its holding, the *Farmer*'s court reasoned that the deputy's misconduct was motivated by personal reasons unrelated to his job duties and his misconduct directly violated the county's sexual harassment policy.[23] Also, as a supervisor and trainer of the plaintiffs, the deputy's authority over the plaintiffs was in no way comparable to the extraordinary power law enforcement officers exercise over members of the public. Furthermore, imposing vicarious liability did not further policy justifications for imposing vicarious liability.

Much of this same reasoning for not applying vicarious liability applies in the instant case. As in *Farmers*, the officer's sexual misconduct was not against a member of the general public unknown to the officer prior to the sexual encounter and did not arise in the course of the officer enforcing the law. And as already discussed, imposing vicarious liability would not further policy justifications for imposing liability. The instant case is even more compelling than *Farmers* in that it involves sexual misconduct committed against a member of the officer's family.

The County's special instructions Nos. 1 and 2 are taken almost verbatim from language in *Farmers*.[24] Based on the undisputed factual circumstances in this case, the language in *Farmers* is equally applicable here and serves as a proper statement of the law as applied to the facts in the instant case. It is undisputed B.'s sexual misconduct was personal in nature, and therefore did not give rise to respondeat superior liability as a matter of law, regardless of whether or not he committed such acts in his patrol car, in uniform, or by threatening to use his officer status. Under the facts of this case, special instructions Nos. 1 and 2 were proper.

---

[21]*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992 [47 Cal.Rptr.2d 478, 906 P.2d 440].

[22]*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at pages 997, 1019.

[23]*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at pages 1007-1008.

[24]*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at page 1007.

The County's special instruction No. 3 is derived from language contained in *Lisa M. v. Henry Mayo Newhall Memorial Hospital.*[25] While the *Lisa M.* case involves sexual misconduct by an ultrasound technician rather than a law enforcement officer, the respondeat superior principles apply equally in the instant case. In *Lisa M.*, an ultrasound technician committed sexual misconduct while examining the plaintiff, a 19-year-old patient. The California Supreme Court held that, as a matter of law, the ultrasound technician's employer, the hospital, was not vicariously liable for his sexual misconduct because the misconduct did not originate with, and was not a generally foreseeable consequence of the ultrasound technician's contact with the plaintiff and it did not arise from any abuse of job-created authority.

Here, B.'s misconduct did not originate with, and was not a generally foreseeable consequence of B.'s contact with plaintiff. The misconduct also did not arise from B. exercising his law enforcement authority. We recognize *Lisa M.* differs factually from the instant case in that the perpetrator was not a law enforcement officer but, as in the instant case, the perpetrator used his job position as a means of perpetrating sexual misconduct. In *Lisa M.* the defendant exploited his position to invoke the victim's trust to sexually abuse her while performing an ultrasound examination. Nevertheless, the court held there was no vicarious liability.

The instant case is even more compelling in that B.'s association with plaintiff did not arise out of his employment. It arose out of his familial relationship with plaintiff, and the sexual abuse was not committed in connection with performing his job responsibilities. As the court in *Lisa M.* stated, the employer "may have set the stage for his misconduct, but the script was entirely of his own, independent invention."[26]

Our high court stated in *Lisa M.* that, " 'If . . . the assault was not motivated or triggered off by anything in the employment activity but was the result of *only propinquity and lust*, there should be no liability.' "[27] Such was the case here. This language, with the exception of the italicized phrase, was stated in the county's special instruction No. 3 and was a correct statement of the law as applied to this case. We conclude that, under the factual circumstances in this case, the trial court did not abuse its discretion deciding to use special instruction Nos. 1, 2, and 3.

---

[25]*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at page 301.

[26]*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at page 306.

[27]*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at page 301; italics added.

Plaintiff attempts to distinguish our recent decision, *Doe 1 v. City of Murrieta*,[28] in which we held the city was not vicariously liable for sexual misconduct by a city police officer. In *Doe 1* a police officer had unlawful sex with two teenage girls who were participating in a police department explorer program. In *Doe 1*, unlike in the instant case, the plaintiffs willingly engaged in sexual conduct with the officer but, as in the instant case, the victims were personally known to the officer through a preexisting relationship rather than through a random encounter during the course of enforcing the law, as in *Mary M.*

While *Doe 1* differs factually in some respects, the same general respondeat superior principles apply here and support our conclusion that the trial court did not commit instructional error in rejecting plaintiff's proposed instructions and accepting the County's.

## 4. *Disposition*

There having been no instructional error, we affirm the judgment. The County is awarded its costs on appeal.

McKinster, Acting P. J., and Ward, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 11, 2003.

---

[28]*Doe 1 v. City of Murrieta, supra,* 102 Cal.App.4th 899.