[No. C054262. Third Dist. Apr. 1, 2008.]

MICHAELINA ORTEGA, a Minor, etc., Plaintiff and Appellant, v. SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES et al., Defendants and Respondents.

714

**Counsel**

The Law Office, Edward P. Dudensing and Christopher S. Buckley for Plaintiff and Appellant.

Evans, Wieckowski & Ward, Carol A. Wieckowski and Cathleen Fralick for Defendants and Respondents.

**Opinion**

**SIMS, J.**—This tragic case will make you sad.

On August 21, 2001, police arrested Michael Ortega because he was screaming uncontrollably in the street and around his apartment and was violently banging on a refrigerator. A urine test showed Michael was under the influence of phencyclidine (PCP).

The Sacramento County Department of Health and Human Services—Child Protective Services of Sacramento County (CPS)—took Michael's 11-year-old daughter, Mijalina[1] into protective custody.

A CPS social worker conducted an investigation and returned Mijalina to her father's home on August 24, 2001.

Four days later, on August 28, 2001, Michael stabbed Mijalina in the heart and lung. She survived.

Acting through her legal guardian, Mijalina has sued CPS and two social workers who participated in the release of Mijalina to her father.

---

[1] Plaintiff now calls herself Mijalina because her legal name of Michaelina was derived from the name of her father.

The trial court granted summary judgment, relying in part on the immunity for discretionary acts of government employees set forth in Government Code Section 820.2 as follows:[2] "Except as otherwise provided by statute, a public employee is not liable for any injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Mijalina appeals.

■ We shall affirm the summary judgment. The Legislature has chosen to immunize government employees from liability for discretionary acts "whether or not such discretion be abused." The Legislature has determined that government could not function if its employees were subject to liability for their discretionary acts, even where the discretion is exercised badly. Such a rule necessarily causes individual hardship in those cases where discretion is exercised badly and the result is serious injury. But this is a policy calculation the Legislature has made. It is not the proper role of this court to countermand it.

## STANDARD OF REVIEW

A motion for summary judgment should be granted if the submitted papers show that "there is no triable issue as to any material fact," and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant meets his burden of showing that a cause of action has no merit if he shows that one or more elements of the cause of action cannot be established, *"or that there is a complete defense to that cause of action."* (Code Civ. Proc., § 437c, subd. (p)(2), italics added.) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid.*)

"The burden of persuasion remains with the party moving for summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 861 [107 Cal.Rptr.2d 841, 24 P.3d 493].) When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true (*id.* at p. 851), or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and

---

[2] Undesignated statutory references are to the Government Code.

cannot reasonably obtain, needed evidence.' (*Id.* at p. 854.) We review the record and the determination of the trial court de novo. [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30]; see also *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].)

" 'First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644 [69 Cal.Rptr.2d 296].)

For reasons that follow, we shall conclude defendants are entitled to summary judgment because they have shown "a complete defense" to plaintiff's causes of action, to wit, that they are immune from liability pursuant to section 820.2.

## THE PLEADINGS

In February 2005, plaintiff filed a complaint alleging two counts— (1) violation of statute (breach of mandatory duty imposed by enactments), and (2) negligence. The complaint alleged:

Plaintiff was born in 1990. Her mother is absent, and her father, Michael Ortega, has a history of domestic violence and substance abuse.

In a prior incident, Michael lost custody of plaintiff in 1998, when he was arrested in her presence on outstanding warrants. He has other children whom he is legally prohibited from seeing because of his violence and abuse, which information was known to or should have been known by defendants. Despite Michael's history, defendants allowed plaintiff to return to his sole, unsupervised custody in April 2000.

Michael continued to abuse alcohol and drugs.

On August 21, 2001, the police responded to a report about a disturbance. They found Michael screaming in the middle of the street, sweating profusely, with bloodshot eyes. Reports indicated he had been pounding on the refrigerator in the home he shared with plaintiff. CPS took plaintiff into protective custody under the Welfare and Institutions Code.

Defendants "purported to investigate" the circumstances of the incident. After one day, they learned not only that Michael had taken controlled substances in his daughter's presence, but that the drug was phencyclidine (PCP), a hallucinogenic drug that can create profound psychological disturbances for days after ingestion. Notwithstanding this fact and Michael's violent and unstable history, defendants returned plaintiff to his custody on August 24, 2001 (three days after his arrest).

On August 28, 2001 (four days after defendants returned plaintiff to Michael's custody), Michael savagely attacked plaintiff, stabbing her with a knife in her heart and lung. She survived, but with enormous physical and emotional injuries.

A urine test showed Michael was under the influence of PCP. He was subsequently convicted of attempted murder of plaintiff and sentenced to prison for more than 20 years.

Defendants failed to perform numerous mandatory duties, in that they:

1. Failed to perform a full and complete investigation of the circumstances and facts surrounding plaintiff's being taken into custody;

2. Failed to gather, assess, and consider those facts required by statute, regulations, policy and procedures manuals, internal directives, and other sources by which mandatory duties were imposed in conducting the investigation;

3. Failed to consider those facts and factors required by statute, regulations, policy and procedures manuals, internal directives, and other sources, in conducting the assessment into whether plaintiff's circumstances and the facts surrounding her being taken into custody dictated that continued detention of the child was a matter of immediate and urgent necessity for her protection and welfare;

4. Failed to conduct background checks on Michael that included his criminal history and restraining order history with his other children;

5. Failed to act appropriately in connection with their supervision and monitoring, and lack thereof, of plaintiff's welfare after returning her to her father's custody in April 2000 and August 2001; and

6. Failed to perform drug tests on Michael that would have revealed he remained under the influence of PCP on August 24, 2001, when defendants returned plaintiff to his custody.

Count one alleged, as against CPS, breach of mandatory duties imposed by enactments (§ 815.6),[3] in that CPS (1) failed to investigate "fully and adequately" the circumstances relating to the placement of plaintiff in temporary custody, as required by Welfare and Institutions Code, section 309;[4] and (2) failed to keep plaintiff in protective custody as a matter of necessity for her protection, as required by Welfare and Institutions Code, section 309.

As alleged in the complaint, CPS failed to investigate:

a. What controlled substance was in Michael's system when he was taken into custody (which turned out to be PCP);

b. Whether and to what extent Michael had been using PCP before his arrest (he had been a regular user of drugs and alcohol for months before this incident);

c. Whether Michael remained under the influence of PCP when defendants returned plaintiff to him (the answer was yes);

d. The effects PCP can have and the risks to others (PCP causes violent, psychotic conduct);

e. Whether Michael's addiction resulted in neglect of his 11-year-old daughter (it did);

---

[3] Section 815.6 states: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

[4] Welfare and Institutions Code section 309, subdivision (a) provides in part: "Upon delivery to the social worker of a child who has been taken into temporary custody under this article [temporary custody without warrant], the social worker shall immediately investigate the circumstances of the child and the facts surrounding the child's being taken into custody and attempt to maintain the child with the child's family through the provision of services. The social worker shall immediately release the child to the custody of the child's parent, guardian, or responsible relative unless one or more of the following conditions exist: [¶] . . . [¶] (2) Continued detention of the child is a matter of immediate and urgent necessity for the protection of the child and there are no reasonable means by which the child can be protected in his or her home or the home of a responsible relative."

f. Whether plaintiff had experienced prior physical abuse by her father (she had); and

g. Whether a court had previously ordered Michael not to have contact with his other children based upon his abuse of alcohol and drugs and his violent propensities.

Had CPS fully discharged its mandatory duty to investigate the circumstances, CPS would not have immediately returned plaintiff to her father, and plaintiff would not have suffered the injuries she sustained when he tried to kill her.

As to the allegation that CPS breached a mandatory duty to retain plaintiff in custody for her protection, the complaint alleged the facts demonstrating that plaintiff needed protection included:

a. Michael was under the influence of PCP, a drug that causes psychotic, violent episodes and can remain in the system for days;

b. Michael was addicted to drugs and alcohol and neglected and abused plaintiff while under their influence; and

c. Before his arrest, Michael neglected plaintiff and did not require her to attend school.

Had CPS fully discharged its mandatory duty to retain plaintiff in custody, she would not have suffered the injuries.

Count two alleged negligence against CPS and the individual defendants, Martha McGowan and Darla Shirey, who were CPS social workers. McGowan and Shirey breached their duties to protect plaintiff by, among other things, (1) failing to conduct a full and complete investigation into the circumstances leading to plaintiff's being placed in temporary protective custody on August 21, 2001, and (2) returning plaintiff to a patently unsafe environment in the custody of a man who had been arrested for acting in a violent and unpredictable manner while under the influence of a drug widely known to cause psychotic and violent behavior. As the social workers' employer, CPS was vicariously liable for their negligence. (§ 815.2.)[5]

---

[5] Section 815.2 states: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Anticipating a defense of discretionary acts immunity under section 820.2,[6] the complaint alleged the social workers' failures related to operational, ministerial matters not subject to their discretion. Even if their actions could be considered to involve the exercise of discretion, they did not exercise such discretion by balancing the risks and advantages of their course of action.

Defendants filed an answer to the complaint with a general denial and an assertion of various affirmative defenses, including governmental immunities provided by sections 810 through 996.6.

## THE MOTION FOR SUMMARY JUDGMENT

In July 2006, defendants filed a motion for summary judgment on the ground that, governmental liability being subject to statute (§ 815),[7] the complaint was barred by discretionary acts immunity (§ 820.2; fn. 6, *ante*) and prosecutorial immunity (§ 821.6)[8]. Defendants' separate statement of undisputed facts asserted:

1. On August 21, 2001, plaintiff was placed in protective custody after her father was arrested by law enforcement officers.

2. The Court Services Bureau within CPS becomes involved upon the placement of a child in protective custody.

3. The Court Services Bureau has 48 hours to investigate and make the initial decision whether to release the child from protective custody and send the family for voluntary services or initiate the filing of a petition to make the child a dependent of the court.

4. The Ortega investigation began with an interview of plaintiff at the Children's Receiving Home on August 21, 2001, by social worker Shirey.

5. On August 21, 2001, social worker McGowan was assigned to the case and commenced a 48-hour investigation to determine whether to file a

---

[6] As we have mentioned, section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

[7] Section 815 provides: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) The liability of a public entity established by this part . . . is subject to any immunity of the public entity provided by statute . . . ."

[8] Section 821.6 states, "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

petition or return plaintiff to her father with services. McGowan decided to return plaintiff to her father with a family maintenance referral.

6. On August 24, 2001, McGowan released plaintiff to her father after completing her 48-hour investigation.

7. On August 28, 2001, the father stabbed plaintiff, causing injuries.

In support of the assertion that McGowan commenced an investigation and decided to return plaintiff to her father, defendants cited McGowan's deposition testimony, including the following:

"Q. Can you describe for me what steps that you took in investigating the appropriate disposition as it related to [plaintiff] that first time she came in on August 22nd when you were assigned to her?

"A. Uh-huh. When I got the case, the only thing I had gotten at first was the protective custody report because she had been placed in protective custody early in the morning as opposed to the day before. You know, they try to get it on the calendar, you know, on—for that day. [¶] So they faxed over the protective custody report from the receiving home. Then I spoke with Darla Shirey at the receiving home. She had interviewed [plaintiff] in the morning, and I was able to print off her notes from the computer. I filled out a form to get a local background check. [¶] A request was done to get her previous file. I looked up her previous—some of the previous information I could find on the computer. I looked at some previous court reports from the prior dependency case."

McGowan said she spoke with Cynthia Marshall (who worked in another unit) and thought she spoke with Mary Berryman (until McGowan learned shortly before her deposition that Berryman was away on vacation at the time).

McGowan said she only started working at CPS one or two weeks before being assigned plaintiff's case. McGowan had handled only one case before plaintiff's case.

In support of defendants' assertion that McGowan "completed" the investigation, defendants cited the following excerpt from page 94 of McGowan's deposition:

"Q. You went through a long list of items that you did during the 48-hour investigation before releasing [plaintiff] to her dad on August 24th; correct?

"A. Correct."

When asked at deposition why she decided to return plaintiff to her father's custody, McGowan said, "Mr. Ortega was willing to participate in [family maintenance] services. He had previously had a dependency case and he finished the services and then did very well. With the services and with the program followed everything [sic], you know, that he needed to be doing in that prior program. There had been no arrests or any other incidents since that time when [plaintiff] had been returned to dependency [sic], had been terminated. No CPS referrals or criminal problems. He was willing to participate in services. [¶] At that time, there had been no abuse or neglect of [plaintiff] with this case on the 21st or even in the prior cases when she had been previously removed. He accepted, you know, responsibility for what he done [sic]. He didn't, you know, try to explain it away or make excuses. He admitted that he had done something wrong and wanted to, you know, work to make things right."

## PLAINTIFF'S OPPOSITION PAPERS

In opposition to summary judgment, plaintiff agreed most of the factual assertions in defendants' separate statement of undisputed facts were correct. However, plaintiff disputed the assertion that McGowan released plaintiff after completing the investigation. Plaintiff responded: "Objection vague and ambiguous and otherwise disputed. This fact as phrased implies that Ms. McGowan performed a complete 48-hour investigation and satisfied the requirements of statute, regulation, and the CPS handbook. Such implication is false. Ms. McGowan's investigation was materially incomplete."

Plaintiff submitted her own separate statement of material facts in opposition to summary judgment, listing significant facts which should have been discovered by the most basic investigation, yet which were unknown to McGowan. Thus, had McGowan obtained the CPS file (as she was supposed to), she would have learned Michael had over 30 convictions arising from drug and alcohol abuse, violence, and driving under the influence. The prior CPS case arose in May 1998, after plaintiff missed 70 out of 140 days of school, and the police discovered her father had an outstanding warrant for corporal injury on a spouse or cohabitant. The father was arrested for contributing to the delinquency of a minor. CPS determined in 1998 that plaintiff would not be safe living with her father, because of his extensive history of alcohol and drug abuse, domestic violence, and child neglect. Plaintiff was returned to her father's custody in late 1999 under close supervision. The dependency proceedings were terminated on April 7, 2000.

Law enforcement officers arrested the father on August 21, 2001, because he was screaming uncontrollably in the street and around his apartment and violently banging on a refrigerator. The protective custody report noted the father was arrested for being under the influence of drugs.

Plaintiff was taken into protective custody. The case was assigned to McGowan, who was inexperienced and had handled only one case before this one. McGowan's assigned supervisor was Mary Berryman, who was on vacation at the time. McGowan made the decision to release plaintiff to her father.

CPS's mandatory handbook identifies specific tasks that must be completed by the social worker in connection with the 48-hour investigation, including (1) ascertain the specific circumstances leading to the protective custody, (2) review any previous CPS file involving the child, and (3) "staff" all material findings with a supervisor. The handbook is created by a high-level CPS official with approval and input by the CPS director, deputy director, and managers.

McGowan thought Michael was merely under the influence of alcohol when arrested, though McGowan had access to the protective custody report which indicated Michael was under the influence of drugs. McGowan also had the intake worker's notes that included plaintiff's statement that her father smoked "charm" on the night of his arrest. McGowan did not know and did not attempt to ascertain the meaning of "charm." "Charm" is a street name for PCP, which is known to cause hallucinations and psychotic episodes. McGowan's notes do not show any followup on this issue. Her notes show, and she says, Michael told her on August 24, 2001, that he used PCP before his arrest. This was after McGowan approved the release but before plaintiff was actually released to her father. McGowan had little understanding of the effects of PCP. She did not attempt to find out more, nor did she attempt to reach a supervisor. McGowan's best memory was that she "staffed" the case with her supervisor, Mary Berryman, but Berryman was on vacation at the time. McGowan discussed the case with a worker (Cynthia Marshall)[9] from another unit but not with a supervisor in McGowan's unit (the court services unit). Supervisor Ruth Hebert signed the final paperwork but played no role in the decision to release plaintiff to her father's custody in August 2001.

McGowan admitted review of the prior CPS file was a requirement of the 48-hour investigation. Nevertheless, she did not obtain the CPS file. She felt she had ordered the CPS file but had no explanation for her failure to secure

---

[9] Marshall testified in deposition that (1) she was not trained to do 48-hour investigations; (2) she had not known plaintiff's father was on PCP; and (3) her opinion would have been different had she known.

it. The CPS file contained Michael's "rap sheet" from the Department of Justice, showing 30 prior convictions and a history of substance abuse and violence. McGowan obtained only a "local rap sheet," which showed only one prior "drunk in public" arrest and one arrest for corporal injury on a spouse/cohabitant. The CPS file also contained a psychological report concerning Michael's history of substance abuse and violence.

On August 28, 2001, Michael approached his 11-year-old daughter with nail polish remover and told her to drink it to kill herself. She refused. He brought her a knife and told her to kill herself. She refused. He stabbed her in the heart. She fled the apartment. He chased her down and pulled her back inside. He stabbed her in the lung. She fled from the apartment and collapsed. The stabbing led to a 22-year prison sentence for plaintiff's father.

## DEFENDANTS' REPLY

Defendants replied to most of plaintiff's factual assertions by objecting they were irrelevant to immunity, misstated testimony, were improper opinion testimony, and were inadmissible hearsay.

## THE RULING

The trial court issued a written order on September 15, 2006 (which was added to the record on appeal by our September 2007 order granting plaintiff's request for augmentation). The order stated in part:

"The mandatory duties (allegedly breached) are set forth in Welfare & Institutions Code Section 309 and DSS [State Department of Social Services] Regulation 31.[10] The statute does not set forth how the immediate investigation of the circumstances of the child and the facts surrounding the child's being taken into custody should be performed.

"DSS Manual 31, provides the state rules and regulations surrounding child welfare.

"The applicable regulations are 31-125 and 31-135. [Regulation] 31-125.1 provides that the social worker investigating a referral shall determine the

---

[10] The DSS (State Department of Social Services) regulations are adopted pursuant to Welfare and Institutions Code section 10554, which states DSS "shall adopt regulations, orders, or standards of general application to implement, interpret, or make specific the law enforced by [DSS], and those regulations, orders, and standards shall be adopted, amended, or repealed by [DSS] only in accordance with the provisions of Chapter 3.5 (commencing with Section 11340), Part 1, Division 3, Title 2 of the Government Code, provided that the regulations need not be printed in the California Code of Regulations or California Administrative Register if they are included in the publications of the department."

potential for or existence of any conditions which place the child at risk and in need o[f] services. [¶] . . . [¶]

"Plaintiff asserts that the social worker McGowan was very inexperienced. McGowan's supervisor was on vacation, and McGowan failed to consult with an[]other supervisor.

"The CPS Handbook identifies specific tasks to be completed in the 48 hour investigation, to insure uniformity. McGowan failed to obtain and review the prior CPS file, as required by the CPS Handbook, during her investigation. The CPS file would have reflected that the father had over 30 criminal convictions, most for substance abuse and contained the psychological report on Mr. Ortega's convictions, most for substance use . . . . It would have shown that the daughter had previously been removed from her father's custody."

The trial court order acknowledged that plaintiff was claiming defendants failed to perform mandatory duties by failing to determine the facts surrounding the child's being taken into custody, failing to determine the potential for existence of conditions placing the child at risk, and failing to perform required tasks identified in the CPS handbook.

The court said the lawsuit is barred by discretionary acts immunity (§ 820.2), citing case law that investigations are uniquely discretionary activities with highly subjective decisions. The court said, "There is no way that the following of forms or rules or agency procedures could transmute this most subjective decision making process into a ministerial act."

The court said the lawsuit was also barred by prosecutorial immunity.

Plaintiff appeals from the ensuing judgment.

## DISCUSSION

### I. Claimed Defect in Court Order

Plaintiff argues the trial court's order failed to address her material arguments and failed to articulate the evidence or legal authority supporting its decision, and the claimed defect in the court order provides an additional basis for reversal. We disagree.

Code of Civil Procedure section 437c, subdivision (g), requires the trial court, in granting summary judgment, to "specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of, and, if applicable, in opposition to, the motion which indicates that no triable issue exists. The court shall also state its reasons for any other determination."

The trial court's order, as set forth *ante*, satisfies these requirements.

## II. *Immunity*

Plaintiff argues discretionary acts immunity does not apply. We disagree. Since we conclude plaintiff's complaint is barred by discretionary acts immunity (§ 820.2; fn. 6, *ante*), we need not address the parties' arguments regarding prosecutorial immunity (§ 821.6; fn. 8, *ante*).

Plaintiff argues discretionary acts immunity does not apply for three reasons: (1) defendants failed to discharge mandatory duties under section 815.6;[11] (2) CPS had established specific protocols for conducting the 48-hour investigation that rendered execution of the investigation (as opposed to the ultimate decision) ministerial; and (3) even if defendants were generally entitled to immunity for Welfare and Institutions Code section 309 investigations, the failure to make a "considered decision" under the facts of this case (i.e., failure to follow specified protocols in the CPS handbook) renders discretionary acts immunity inapplicable.

### A. *Section 815.6*

Plaintiff argues defendants had mandatory duties to gather the pertinent facts and make a determination of the risk, pursuant to Welfare and Institutions Code section 309 and the DSS regulations.[12] However, plaintiff fails to show any breach of those duties.

Thus, as indicated, Welfare and Institutions Code section 309 (fn. 4, *ante*) required the social worker "immediately [to] investigate the circumstances of the child and the facts surrounding the child's being taken into custody . . . ."

---

[11] Section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

[12] She does not argue under this subheading that the CPS handbook created mandatory duties within the meaning of section 815.6.

Department of Social Services Manual of Policies and Procedures, Child Welfare Services, Division 31, regulation 31-125.1 provides: "The social worker initially investigating a referral shall determine the potential for or the existence of any condition(s) which places the child . . . at risk and in need of services and which would cause the child to be a person described by Welfare and Institutions Code Sections 300(a) through (j)."

■ Section 815.6's liability for breach of a mandatory duty applies to ministerial duties imposed by regulations as well as statutes. Thus, "[a]ctions that are manifestly ministerial, because they amount only to obedience to orders which leave the officer no choice, plainly include actions governed by specific statutory or regulatory directives. Such actions have been found nondiscretionary, and thus not immunized, because they entail the fulfillment of enacted requirements. [Citations.]" (*Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125, 141 [32 Cal.Rptr.2d 643] [liability could be imposed for social worker's failure to comply with mandatory requirement of monthly face-to-face contact with child placed in foster care].)

Here, the statute and regulation relied upon by plaintiff merely required defendants to conduct an investigation and determine the potential risk to the child. Neither of these are ministerial duties, and both involve a formidable amount of discretion. Thus, in *Ronald S. v. County of San Diego* (1993) 16 Cal.App.4th 887 [20 Cal.Rptr.2d 418], an adopted minor claimed the county was liable for negligence in investigating and selecting abusive adoptive parents and in permitting the return of the minor to their custody when the county knew or should have known the child was in danger. In concluding that discretionary acts immunity protected the social workers and the county, the appellate court said: "The nature of the investigation to be conducted and the ultimate determination of suitability of adoptive parents bear the hallmarks of uniquely discretionary activity." (*Id.* at p. 897.)

Moreover, defendants complied with the duties imposed by the statute and regulation, by conducting an investigation and making a determination about potential risk to the child. Clearly, the investigation was "lousy" (as defense counsel conceded in oral argument to the trial court), and clearly the determination was the wrong one. However, that is what section 820.2 immunity does—it immunizes discretionary decisions "whether or not such discretion be abused." We note section 815.6's reference to "reasonable diligence" does not mean the investigation must be diligent. Rather, defendants would have to show reasonable diligence had they failed to conduct an investigation or make a determination.

In her reply brief, plaintiff cites a recent case involving safety of drinking water, which plaintiff interprets as supporting her assertion that the statute and regulation at issue in this case impliedly require that the 48-hour investigation be performed in conformance with the specific directives in the CPS handbook. However, while we disagree with plaintiff's interpretation, we need not address the matter because the opinion has been rendered noncitable by the California Supreme Court's grant of review. (*Guzman v. County of Monterey* (2007) 155 Cal.App.4th 645 [66 Cal.Rptr.3d 258], review granted Jan. 3, 2008, S157645.)

We conclude plaintiff fails to show breach of a mandatory duty under section 815.6.

B. *Section 820.2 Applies to 48-hour Investigations*

Plaintiff contends CPS is not entitled to discretionary acts immunity, because the 48-hour investigations are ministerial, in that the CPS handbook sets forth specific protocols to be followed. Thus, the CPS handbook requires social workers to review the protective custody report, gather information, conduct a record check to determine the child's status and CPS history, and "[c]onduct criminal record check, CPS and APS history, Medi-Cal CAL Works checks and records all information." We shall conclude plaintiff fails to show grounds for reversal.

Section 815.2 states:

"(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

The immunity for discretionary acts under section 820.2 "confers immunity only with respect to those 'basic policy decisions' which have been committed to coordinate branches of government, and does not immunize government entities from liability for subsequent ministerial actions taken in the implementation of those basic policy decisions [citation]. This distinction

is sometimes characterized as that between the 'planning' and the 'operational' levels of decision-making [citation]." (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 793 [221 Cal.Rptr. 840, 710 P.2d 907].)

Plaintiff cites *Doe 1 v. City of Murrieta* (2002) 102 Cal.App.4th 899 [126 Cal.Rptr.2d 213], as supporting a conclusion that the CPS handbook set forth specific protocols for the 48-hour investigation, and those protocols rendered the 48-hour investigation ministerial, thus rendering discretionary acts immunity inapplicable. *Doe 1* involved a youth explorer program sponsored by the city police department. The plaintiffs were sexually abused, albeit consensually, by a police officer who was their adviser in the program. The plaintiffs claimed the city and the police department were negligent in failing to take sufficient steps to prevent the sexual exploitation, such as enforcing police department (PD) rules and regulations set forth in the PD explorer program manual. (*Id.* at pp. 911–912.) The manual prohibited displays of affection beyond common courtesy and prohibited minors from being in the field after 11:00 p.m. (*Id.* at pp. 912–913.) The manual's provisions were violated. (*Ibid.*) There was sufficient evidence that the police department knew or should have known of the violations and failed to enforce the PD rules and regulations. (*Ibid.*)

However, *Doe 1* has been criticized for its failure to identify a statutory basis for governmental liability. (*de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 255 [67 Cal.Rptr.3d 253].)

Moreover, we agree with defendants that *Doe 1* (and other non-social-worker cases cited by plaintiff) are inapposite, because of the expressed policy against impeding the work of social workers dealing with custody issues of minors.

Thus, as indicated in *Ronald S. v. County of San Diego, supra,* 16 Cal.App.4th 887, the minor claimed the county was liable for negligence in investigating and selecting abusive adoptive parents and in permitting the return of the minor to their custody when the county knew or should have known the child was in danger. The appellate court concluded that discretionary acts immunity protected the actions of the social workers and the county in processing the adoption. "The nature of the investigation to be conducted and the ultimate determination of suitability of adoptive parents bear the hallmarks of uniquely discretionary activity. The decisions made in the adoption process are by nature highly subjective. . . . There is no way that the following of forms or rules or agency procedures could transmute this most subjective decisionmaking process into a ministerial act. Following the [California Supreme Court] admonition to courts not to second-guess policy decisions of other branches of government, . . . second-guessing adoption

decisions, and imposing civil liability upon public servants when the decision turns out to be wrong, would severely interfere with and surely impede the proper workings of the responsible social service department." (*Id.* at p. 897.)

In *Thompson v. County of Alameda* (1980) 27 Cal.3d 741 [167 Cal.Rptr. 70, 614 P.2d 728], a juvenile offender placed in his mother's custody killed a child in the neighborhood. The Supreme Court held the county was immune: "Choosing a proper custodian [for the juvenile offender] is a complex task. [Citations.] The determination involves a careful consideration and balancing of such factors as the protection of the public, the physical and psychological needs of the minor, the relative suitability of the home environment, the availability of other resources such as halfway houses and community centers, and the need to reintegrate the minor into the community. The decision, requiring as it does, comparisons, choices, judgments, and evaluations, comprises the very essence of the exercise of 'discretion' . . . immunized under section 820.2." (*Id.* at pp. 748–749.)

Defendants cite other cases, but they are distinguishable. Thus, *Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450 [81 Cal.Rptr.2d 165], involved a mother who was unable to care for her daughter and who asked the county to take custody. The county placed the child in a foster home. The child was murdered at school. The birth mother sued for negligence and breach of mandatory duty, arguing the foster home was not the best environment for the child. (*Id.* at p. 1459.) The appellate court upheld summary judgment in favor of the county based on discretionary acts immunity. The applicable statute (Welf. & Inst. Code, § 16501.1) required social workers to analyze the selection criteria before placing a child, but the statute did not specify the ultimate placement to be made, or dictate that any one factor be controlling. (68 Cal.App.4th at p. 1459.) Although the statute provided a general policy statement for guidance, it did not require a particular result. (*Ibid.*) The relevant factors were difficult and subjective and best left to the judgment of the social workers. (*Id.* at p. 1460.) To the extent the statute imposed a mandatory duty, it was a duty to evaluate the stated criteria before making a placement selection. (*Id.* at p. 1460.) The undisputed facts showed the social worker analyzed the selection criteria enumerated in the statute before placing the child in the foster home. (*Ibid.*) However, *Becerra* is distinguishable because it was undisputed that the social worker analyzed the enumerated criteria. Here, plaintiff's complaint is that the social worker failed to gather enumerated sources of facts.

Defendants also cite *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869 [271 Cal.Rptr. 513], which rejected an argument that the investigative nature of a social worker's job was ministerial rather than discretionary. However, *Alicia T.* is distinguishable because it found immunity for " 'voluntary intervention' " to protect a child, i.e., removing a minor

from the parental home based upon suspicion of abuse and the instigation of dependency proceedings. (*Id.* at p. 881.) Here, defendants had no choice but to take plaintiff into protective custody and initiate a 48-hour investigation when her father was arrested and there was no other family member to take her in.

Plaintiff's reply brief acknowledges the recent case of *Jacqueline T. v. Alameda County Child Protective Services* (2007) 155 Cal.App.4th 456 [66 Cal.Rptr.3d 157], which affirmed summary judgment in an action alleging social workers were negligent in investigating reports of possible sexual abuse of three children. Plaintiff here argues *Jacqueline T.* is distinguishable based on the nature of the investigative acts in question, because it involved tasks such as whether to accept a report of child abuse, whether to prepare an internal report, and whether to respond immediately, whereas this case involves nondiscretionary acts of gathering the prior CPS file, determining the facts, and staffing the case with a supervisor. However, among the tasks at issue in *Jacqueline T.* was an alleged "failure to conduct a reasonable and diligent investigation . . . ," which is the essence of the complaint in the case before us. (*Id.* at p. 468.)

Plaintiff also cites *Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180 [89 Cal.Rptr.2d 768], which held that Penal Code section 11166, which requires a law enforcement officer to report " 'reasonably suspect[ed]' " child abuse, impliedly requires an officer to investigate a child abuse allegation. (75 Cal.App.4th at pp. 1185–1190.) The failure to investigate was clearly a breach of that duty. (75 Cal.App.4th at p. 1189.) Here, in contrast, there was not a failure to investigate, but rather a claim of *inadequate* investigation. Thus, *Alejo* does not help plaintiff.

■ We conclude section 820.2 immunity applies to the 48-hour investigation at issue in this case.

## C. *Application to This Case*

Plaintiff argues that, even if 48-hour investigations might under some circumstances be protected by the discretionary acts immunity, the immunity should not be applied here, where McGowan failed to exercise any discretion in reaching a considered decision as to how to carry out her investigation. We disagree.

Plaintiff quotes from *Johnson v. State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], that "to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in

'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." (*Id.* at pp. 794–795, fn. 8.) *Johnson* made this statement in a footnote under a heading holding that the decision of a parole officer as to what warnings to give to foster parents did not constitute the type of basic policy decision that the Government Code seeks to insulate from liability in section 820.2. (69 Cal.2d at p. 793.)

However, the record in this case does reflect that McGowan made a considered decision balancing risks and advantages. It is clear she did so on woefully inadequate information, but she did do so. We disagree with plaintiff that *Johnson* required defendants in this case to prove that McGowan complied with the CPS handbook.

Indeed, as noted by defendants, the California Supreme Court later said, "*Johnson* does not require a *strictly careful, thorough, formal, or correct* evaluation. Such a standard would swallow an immunity designed to protect against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy. [Citation.] A fair reading of the instant complaint reveals allegations that the Board made an *actual, conscious, and considered* collective policy decision to replace plaintiff as superintendent. The complaint admits of no theory that the Board acted unconsciously or failed to weigh pros and cons. On the contrary, it asserts that Board members *did* purposefully employ standards they deemed relevant, but that the standards employed were wrong and impermissible. For reasons already stated, claims of *improper* evaluation cannot divest a discretionary policy decision of its immunity." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 983–984 [42 Cal.Rptr.2d 842, 897 P.2d 1320], fn. omitted.)

█ We recognize plaintiff says she is not complaining about an exercise of discretion or how the social worker analyzed the pertinent factors. Rather, plaintiff is complaining the social worker failed to gather the pertinent facts. Plaintiff argues this case involves breach of a ministerial duty to gather specific sources of facts. However, the exercise of discretion invariably entails the collection and evaluation of information. Thus, the collection and evaluation of information is an integral part of "the exercise of the discretion" immunized by section 820.2. The distinction urged by plaintiff would eviscerate section 820.2 immunity, because in every case there would have to be a trial on the step-by-step actions which comprised the investigation forming the basis for an exercise of discretion. This is an untenable result.

We conclude discretionary acts immunity applied in this case, defeating both counts of the complaint. We therefore need not address the parties' arguments about prosecutorial immunity.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(4).)

Blease, Acting P. J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 9, 2008, S163452.