Filed 2/3/16  B.H. v. County of San Bernardino CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| B.H., a minor, etc., | |
| Plaintiff and Appellant, | E054516 |
| v. | (Super.Ct.No. CIVDS913403) |
| COUNTY OF SAN BERNARDINO et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Donald R. Alvarez, Judge.  Affirmed in part; reversed in part.

The Keane Law Firm, Christopher J. Keane; Esner, Chang & Boyer, Stuart B. Esner and Andrew N. Chang for Plaintiff and Appellant.

Lynberg & Watkins, Norman J. Watkins, Shannon L. Gustafson and Pancy Lin Misa for Defendants and Respondents.

In September 2008, when B.H. was two years old, his mother, L.H., noticed bruises on B.H.'s face and body when he returned from visitation with L.S. (father).

1

L.H.'s former foster mother[1] reported the injuries to the San Bernardino County Sheriff's Department. A sheriff's deputy examined the child, determined there was an ongoing custody dispute, and concluded there was no need for further investigation. A month later, B.H. received a devastating head injury while in the care of his father which will permanently disable him.

L.H., as guardian ad litem, filed a lawsuit against the County of San Bernardino, the City of Yucaipa, Deputy Sheriff Kimberly Swanson, and her supervisor, Sergeant Jeff Bohner,[2] for violation of the Child Abuse and Neglect Reporting Act (CANRA), for not cross-reporting his injuries to the Department of Children and Family Services (DCFS). The trial court granted summary judgment in favor of the public entities and employees (the County defendants); plaintiff appealed, and we originally affirmed the summary judgment in favor of both the San Bernardino County Sheriff's Department and the Deputy, holding that there was no independent duty on the part of the sheriff's department to cross-report the complaint to DCFS after the deputy had concluded there was no child abuse.

---

[1] Mother had no formal foster parent-child relationship with C.K., but referred to her as her mother, or adoptive mother. C.K. was a friend of mother's father who "wrote over custody [of mother] to her," when mother was 13. For convenience and lack of a better term, we will refer to C.K. as mother's former foster mother.

[2] Father was also named in the suit for battery and child abuse, but he was not involved in the summary judgment motion or this appeal.

Plaintiff petitioned for review in the California Supreme Court. The Supreme Court reversed, holding that the sheriff's department had a mandatory and ministerial duty to cross-report the child abuse allegations made to the 911 operator to the child welfare agency and that the failure to cross-report can support a finding of breach of a mandatory duty, elements required to establish public entity liability pursuant to Penal Code section 11166, subdivision (k). The Supreme Court further concluded the officer had no duty to report the child abuse allegations and her investigative finding to the child welfare agency under Penal Code section 11166, subdivision (a). (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 175.)

## BACKGROUND

Plaintiff's complaint asserts two causes of action against the county defendants, and two causes of action against father, whose actions directly caused plaintiff's injuries. Our review is limited to those causes of action involving the liability of the county defendants, which were the subject of the summary judgment motion.

Plaintiff, B.H., was born in August 2006, and lived with his mother, L.H., in the home of L.H.'s former foster mother. In 2008, by an informal agreement, father had custody of plaintiff every weekend. On July 2, 2008, father reported to the County of San Bernardino Sheriff's Department that plaintiff arrived for a visit with unexplained bruises on his neck. A sheriff's deputy investigated the incident and determined the allegations were inconclusive. When the mother learned of this report the next morning, July 3, 2008, she contacted DCFS and informed the intake operator that her son had been

3

abused by an unknown person. Mother also informed DCFS that father refused to return custody of plaintiff to her and that she was pursuing an ex parte order to regain custody.

On July 9, 2008, a DCFS social worker responded to mother's July 3d report, interviewing mother at her residence, and visiting father at his. The social worker facilitated a meeting between mother, father, and B.H. on July 22, 2008. At that meeting, the parents agreed that father would relinquish B.H. to mother that day, and then resume his regular weekend visits until a further court hearing, which was scheduled for August 6, 2008. The social worker concluded that the situation was a custody battle and the allegations of physical abuse were unfounded.

On September 17, 2008, a formal court order was made, providing that father would have custody every weekend, plus one two-hour visit midweek. On September 22, 2008, mother picked up plaintiff from a visit with his father and noticed bruises on his face. When mother got home, she talked to her former foster mother and they took pictures of the bruises on B.H. Then mother left to go to an evening class, and after class, she went to a party until 2:30 or 3:00 a.m. Mother suspected child abuse, but wanted to speak with father before making any report.

While mother was out, the former foster mother contacted the sheriff's department and reported that plaintiff had come home from a visit with his father with bruises on his forehead. The dispatcher asked if the child required medical attention, but the former foster mother declined because the child had a doctor's appointment the next day. The

4

former foster mother informed the dispatcher that she was making the report because she was instructed to do so.

Sheriff's Deputy Kimberly Swanson responded to the residence while mother was gone and plaintiff was in the care of mother's former foster mother. When Deputy Swanson arrived, plaintiff was asleep, so the former foster mother woke him and brought him to the deputy to observe. Deputy Swanson examined plaintiff's head, face, upper body, and arms. Deputy Swanson observed that plaintiff had a scratch and bruising near his right eye and temple, and a small older bruise on his right arm, which possibly occurred during a fall. Deputy Swanson did not see any bruises on the child's forehead or torso when she examined him.

Deputy Swanson went out to her patrol vehicle and ran a computer record check on the parents. In the meantime, the former foster mother had put plaintiff back to bed. When Deputy Swanson returned to the house, she left her card with mother's former foster mother and requested that plaintiff's mother call her when she returned home.

Deputy Swanson filled out a report in which she recounted that father had informed the former foster mother that plaintiff had fallen and bumped his head while at Wienerschnitzel. The report concluded that there was an ongoing custody dispute between the parents, that the former foster mother requested documentation of the incident and that the case was "for information only at this time and forward to station files." Deputy Swanson left a card for mother to contact her when she returned home, but

5

mother never did.  The deputy cleared the case, and her report was reviewed and approved by her supervisor, Sergeant Jeff Bohner.

After September 22, 2008, mother did not allow plaintiff to visit with his father. However, on October 11, 2008, mother allowed a visit.  On October 18, 2008, father called his live-in girlfriend at work to report that plaintiff had fallen, hit his head, and would not wake up.  Father's girlfriend rushed home.  When she got home, the girlfriend noticed plaintiff was stiff and asked the father whether he had called the mother or 911 yet.  Father then called 911, and subsequently the girlfriend called mother to report the injury.

Emergency personnel responded to father's residence and transported plaintiff to Loma Linda University Hospital where plaintiff was treated for severe head trauma. Plaintiff suffered seizures and was still unconscious upon arrival at the hospital, where a craniectomy was performed, removing a portion of the child's skull to relieve pressure in the brain from swelling.  Plaintiff suffered subdural hematoma, cerebral edema, and subfalcine herniation[3] caused by intracranial pressure.  A consulting forensic pediatrician determined that the injuries were inflicted, the result of child abuse.  The pediatrician

---

[3] Subfalcine herniation is the most common cerebral herniation pattern, characterized by displacement of the brain beneath the free edge of the falx cerebri due to raised intracranial pressure.  (http://radiopaedia.org/articles/subfalcine_herniation [as of 5/1/2013]; Laine, Shedden, Dunn, Ghatak, *Acquired Intracranial Herniations: MR Imaging Findings*, 165 Amer. Journal of Roentgenology 967 (1995).)

6

concluded that father's explanation that the child was knocked backwards from a standing position onto a carpeted floor by a 16-month old half-sibling was not credible.

On September 11, 2009, plaintiff, through mother, as his guardian ad litem, filed a complaint against the County of San Bernardino, the City of Yucaipa, Deputy Swanson, Sergeant Bohner, and father. The causes of action against the county, city, and sheriff's department personnel alleged breach of mandatory duty to report child abuse, pursuant to Government Code section 815.6 (first cause of action), and negligence, under theories of res ipsa loquitur and negligence per se, pursuant to Government Code section 815.2 (second cause of action).

Defendant made a general appearance by way of answer and general denial on November 20, 2009, asserting several affirmative defenses, including governmental immunities. On November 10, 2010, defendant filed a motion for summary judgment. The motion was heard on May 12, 2011, and the court orally ruled in favor of granting the motion. A formal order granting the motion was filed on July 14, 2011. On August 11, 2011, judgment was entered in favor of defendants County of San Bernardino, City of Yucaipa, Sergeant Jeff Bohner, and Deputy Kimberly Swanson. On September 8, 2011, plaintiff timely appealed.

## DISCUSSION

Plaintiff argues on appeal that there were triable issues of fact as to whether defendants' failure to cross-report the child abuse report of September 22, 2008, violated their mandatory reporting duties under CANRA, precluding entry of summary judgment.

7

As such, plaintiff asserts the trial court erroneously concluded defendants were immune from liability. With the benefit of the Supreme Court's guidance, as to the defendant San Bernardino County Sheriff's Department, we agree and reverse. As to the individual deputy, we affirm the order granting summary judgment.

### a. *Standard of Review*

Summary judgment is properly granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250; Code Civ. Proc., § 437c, subds. (b), (o).) A defendant meets his burden of showing that a cause of action lacks merit if he shows that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Ortega v. Sacramento County Dept. of Health & Human Services* (2008) 161 Cal.App.4th 713, 716.) The purpose of a motion for summary judgment is to discover whether the parties possess evidence which requires the fact-weighing procedures of a trial. (*Soto v. County of Riverside* (2008) 162 Cal.App.4th 492, 496, quoting *City of Oceanside v. Superior Court* (2000) 81 Cal.App.4th 269, 273.)

We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476, citing *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.) Because we review independently, or de novo, the trial court's stated

8

reasons for granting summary judgment are not binding on us; we review the ruling, not the rationale. (*Soto v. County of Riverside, supra,* 162 Cal.App.4th at p. 496; *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

### b. *The San Bernardino County Sheriff's Department Had a Mandatory Duty to Cross-Report under Section 11166, Subdivision (k).*

Penal Code section 11166, subdivision (a), requires a mandated reporter to make a report to a police department or sheriff's department, among other agencies, "whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect."

A mandated reporter has "reasonable suspicion" within the meaning of the act, when it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate, on his or her training and experience, to suspect child abuse or neglect. (Pen. Code, § 11166, subd. (a)(1).) Penal Code section 11165.9 provides that reports of suspected child abuse or neglect shall be made by mandated reporters to any police department or sheriff's department. Peace officers and social workers are mandated reporters. (Pen. Code, § 11165.7, subds. (a)(15), (19).)

In addition, law enforcement agencies "shall" cross-report to the county welfare or probation department "every known or suspected instance of child abuse or neglect reported to it which is alleged to have occurred as a result of the action of a person

9

responsible for the child's welfare." (Pen. Code, § 11166, subd. (k).) Reciprocal duties of cross-reporting to law enforcement agencies are imposed on the county welfare or probation department. (Pen. Code, § 11166, subd. (j); *B.H. v. County of San Bernardino*, *supra*, 62 Cal.4th at p. 178.) Plaintiff argues that Penal Code section 11166, subdivision (k), imposed on the Sheriff's Department an independent and mandatory duty to inform the child welfare agency of the initial 911 report, separate and apart from Deputy Swanson's duty to investigate and cross-report. We agree.

Government Code section 815.6 provides that where a public entity is under a mandatory duty, it is liable for an injury caused by his failure to discharge the duty unless it establishes it exercised reasonable diligence to discharge the duty. Government Code section 815.6's liability for breach of a mandatory duty applies to ministerial duties imposed by statutes and regulations. (*Ortega v. Sacramento County Dept. of Health & Human Svcs.*, *supra*, 161 Cal.App.4th at p. 728; see also, *Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125, 141.) To prove a violation under Government Code section 815.6, the plaintiff must plead the existence of a specific statutory duty. (*Jacqueline T. v. Alameda County Child Protective Svcs.* (2007) 155 Cal.App.4th 456, 471.)

In order to find liability under Government Code section 815.6, the plaintiff must establish, as an element of the cause of action, that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898.)

10

In examining the language of Penal Code section 11166, subdivision (k), the California Supreme Court concluded the statute imposes an obligatory duty, and not merely a discretionary or permissive authorization, upon law enforcement agencies to cross-report the child abuse or neglect reports that it receives. (*B.H. v. County of San Bernardino*, *supra*, 62 Cal.4th at p. 181.) The Supreme Court reasoned that the purpose of CANRA, of which Penal Code section 11166, subdivision (k) is a part, is to protect children from abuse and neglect and that the cross-reporting provisions were designed to foster cooperation between child protective agencies and other persons required to report. (*B. H. v. County of San Bernardino*, *supra*, at pp. 182-183.) It concluded that the statutory provisions reflect the Legislature's intent that the various law enforcement and child welfare agencies immediately communicate to each other information received on alleged child abuse or neglect so that they may in turn coordinate their investigative procedures.[4] (*Id*., at p. 185, citing Pen. Code, § 11166.3, subd. (a); Cal. Code Regs. Tit 11, § 900.) Because Penal Code section 11166, subdivision (k) creates a separate, independent and mandatory duty to cross-report, the violation of which creates a separate basis of liability under Government Code section 815.6, we reverse the order granting summary judgment as to the County of San Bernardino and remand the matter to the trial court for further proceedings.

---

[4] The Supreme Court also disapproved of the holding of *Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180, to the extent it is inconsistent with its holding.

11

**c.** *Deputy Swanson Did Not Have a Duty to File a Report of Suspected Abuse Pursuant to Penal Code Section 11166, Subdivision (a).*

In our original opinion, we held that under Penal Code section 11166, subdivision (a), Deputy Swanson may have had a mandatory duty to investigate Kinney's report of child abuse, but that because her investigatory findings were subject to her discretion, her decision not to cross-report was immune from liability. The California Supreme Court, however, held that although our conclusion was correct, our premise was wrong, insofar as it held that Penal Code section 11166, subdivision (a) does not require a law enforcement officer conducting an investigation of an initial report of child abuse that has been received by an agency to make additional reports about the same incident. (*B.H. v. County of San Bernardino*, *supra*, 62 Cal.4th at p. 186.)

The Supreme Court reasoned that in regard to investigating whether child abuse or neglect has occurred, the assessment of mandated reporters and the agencies that receive those child abuse reports are not the same and are governed by different standards. (*B.H. v. County of San Bernardino*, *supra*, 62 Cal.4th at p. 189.) It held that Deputy Swanson's findings, observations, and duties regarding the investigation of the reported incident of abuse were not governed by Penal Code section 11166, subdivision (a), but were instead governed by CANRA's provisions setting forth various obligations and procedures related to investigations. (*B.H. v. County of San Bernardino*, *supra*, at p. 189.)

The Supreme Court went on to explain that law enforcement agencies, in addition to their mandatory duty to cross-report, will investigate reported incidences pursuant to

12

their "existing duties." (*B.H. v. County of San Bernardino*, *supra*, 62 Cal.4th at p. 190, citing Pen. Code, § 11166.3, subd. (a); *Planned Parenthood Affiliates v. Van de Kamp* (1986) 181 Cal.App.3d 245, 259.) It then concluded that decisions of child welfare agency employees regarding determinations of child abuse are subjective *discretionary* ones that are incidental to the employees' investigations. (*B.H. v. County of San Bernardino*, *supra*, at pp. 191-192, and cases cited therein, italics added.) In the context of investigations, a sheriff's department is considered a child protective agency designated to accept reports of abuse (Pen. Code, § 11165.9) and to investigate them. (Pen. Code, § 11166.3, subd. (a); *B.H. v. County of San Bernardino*, *supra*, at p. 191.)

Government Code section 820.2 provides for immunity to a public employee for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not that discretion was abused. The Supreme Court concluded that because Deputy Swanson did not have a mandatory duty to report under Penal Code section 11166, subdivision (a), she is not directly liable under the statutory provisions, and the county defendants are not derivatively liable under Government Code section 815.2, subdivision (a). (*B.H. v. County of San Bernardino*, supra, 62 Cal.4th at pp. 197-198; see also *Jacqueline T. v. Alameda County Child Protective Services*, *supra*, 155 Cal.App.4th at pp. 468-469.)

Summary judgment was properly granted as to Deputy Swanson.

13

## DISPOSITION

The judgment is reversed as to the San Bernardino County Sheriff's Department, and affirmed as to Deputy Swanson. The parties will bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:


McKINSTER
J.


MILLER
J.

14